AMERICAN SURETY COMPANY OF NEW YORK, Respondent, *v.* GEORGE R. PALMER, Appellant.

Subrogation — bills, notes and checks — only actual payment confers right of subrogation by operation of law — assumption by surety of loss to trust company through overdraft by customer — receipt by surety from customer, on account of overdraft, of defendant's note intrusted to customer solely for purpose of discount — surety not a holder for value where it received the note prior to its having made any payment on account of the loss and may not recover thereon.

1. It is not liability to pay but an actual payment to the creditor which confers the right to subrogation.

2. A surety company that had assumed liability for the amount of an overdraft by a customer of a trust company, permitted through the dishonesty of one of said company's employees, and who thereafter, but before making any payment on such liability, received from the customer the promissory note of defendant herein, intrusted to the said customer solely for the purpose of having it discounted for defendant's benefit, but delivered to the surety company on account of the overdraft, with the statement that it had been received in payment of a debt, cannot recover in an action upon the note. The policy of insurance contained no provision for subrogation and if that doctrine is to be applied it must be by operation of law as there was no assignment of any cause of action which the trust company may have had. At law, until payment by the surety company of the loss, it might not claim to be subrogated to the rights of the trust company against the customer and the latter was in no sense its debtor. It follows that when the note was transferred to it the surety company was not a holder for value and the defenses which the defendant might have interposed in an action brought against him by the one to whom he intrusted the note for discount are equally available to him in this action.

*American Surety Co.* v. *Palmer*, 210 App. Div. 867, reversed

(Argued February 2, 1925; decided March 3, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 21, 1924, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court. (See 211 App. Div. 172.)

*John H. McCrahon* for appellant. The plaintiff was not a holder of the Palmer note for value and in due course. (*Laing* v. *Hadgens*, 82 Misc. Rep. 393; *Pneumatic Co.* v. *Texas R. R. Co.*, 200 N. Y. 129; *Bank* v. *Cowles*, 180 N. Y. 348; *McGrath* v. *Carnegie Tr. Co.*, 221 N. Y. 95; *Arnold* v. *Green*, 116 N. Y. 571; *Morehouse* v. *B. H. Co.*, 185 N. Y. 525; *E. L. A. Corp., Ltd.*, v. *Inter. M. P. Co.*, 192 App. Div. 93; *Petrie* v. *Miller*, 71 App. Div. 18; 173 N. Y. 596; *Kelso & Co.* v. *Ellis*, 224 N. Y. 537; *Bank of America* v. *Waydell*, 187 N. Y. 119.)

*R. B. Marvin* for respondent. The plaintiff was a holder of the Palmer note in due course and for value. (*St. Mark's Church* v. *Teed*, 120 N. Y. 583; *King* v. *Bowling Green Trust Co.*, 145 App. Div. 398; *Maurice* v. *Fowler*, 78 Misc. Rep. 357; *Broderick Rope Co.* v. *McGrath*, 81 Misc. Rep. 199; *Hall Co.* v. *Todd*, 139 N. Y. Supp. 111; *Mayer* v. *Heidelback*, 123 N. Y. 332; *Bigelow Co.* v. *Automatic Gas Producer Co.*, 56 Misc. Rep. 389; *Mindlin* v. *Appelbaum*, 62 Misc. Rep. 300; *Riverside Bank* v. *Woodhaven Junction Land Co.*, 34 App. Div. 359; *Joveshof* v. *Rockey*, 58 Misc. Rep. 559; *Matter of Ranlett*, 118 Misc. Rep. 528.)

ANDREWS, J. One Wilmath was a customer of the City Bank Trust Company of Syracuse. In the spring of 1922 he deposited in that bank three checks on other banks aggregating $19,000 drawn to his order by outsiders and indorsed by him. They were all credited to his account although marked for collection. When presented for payment, payment was refused and they have never since been made good. Yet Wilmath was permitted to draw against them to the amount of $18,715.09. The City Bank Trust Company had a

policy of insurance designed to protect it against loss due to the dishonest act of any employee issued by the American Surety Company of New York. Evidently believing that this overdraft which Wilmath was in no position to repay was the result of such dishonesty in August it filed a proof of claim with its insurer. The latter investigated the matter and found the checks were worthless. We are not informed whether there was any legal liability under the policy but its counsel told the president of the bank that the claim would be paid and one of its agents says incidentally that it had assumed the liability. It then interviewed Wilmath and endeavored to have him pay it the amount which it intended to pay to the trust company.

Wilmath had previously done business with the defendant and had gained his confidence. Mr. Palmer needed some money but was unable himself to discount his note at a bank. Wilmath promised that if he would execute a note for $5,000 to his order he would get it discounted and give Palmer the proceeds. Palmer thereupon on November twenty-ninth made the negotiable promissory note involved in this action and intrusted it to Wilmath for that purpose. Wilmath, however, never negotiated the note as he had promised to do and Palmer never received anything whatever on account of it. When Palmer demanded its return Wilmath made excuse for his delay in complying with this request. The truth of these facts we must now assume.

Meanwhile the surety company was still pressing Wilmath for payment, and on December seventh it received the Palmer note indorsed by Wilmath on account of the overdraft on the trust company which the surety company was to repay, being told by Wilmath that he had obtained it from Palmer as payment for some stock sold to him. It then delivered the note to the trust company in effect for collection with the understanding that if not paid at maturity it should be returned to the surety company and made good by the latter company.

Against the $18,715.09 overdraft certain deposits made by Wilmath and a small account of the employee said to be at fault were credited. Upon the balance on December twenty-ninth the surety company paid the trust company $10,544.04 and on April 4, 1923, the Palmer note not having been paid and having been returned to the surety company, the further sum of $5,032.97 which cleared up the deficit. The surety company then began this action against Palmer. The trial resulted in the direction of a verdict for the plaintiff. The Appellate Division has affirmed.

If the testimony shows that the surety company took this note in good faith and for value with no notice of the defect in the title thereto of Wilmath, the decision of the courts below was right. (Neg. Instruments Law [Cons. Laws, ch. 38], sec. 91.) For the purposes of this appeal, we shall also assume that it had no notice of any defect in Wilmath's title and no knowledge of such facts that its taking the instrument amounted or might give rise to an inference of bad faith. The serious question is whether it is a holder for value. And upon this question the burden of proof rests upon the surety company. Its claim is that on December seventh Wilmath owed it about $15,000 and that it took this note as part payment for this indebtedness. If so, it is a holder for value. (Neg. Instruments Law, sec. 51.) Its claim, however, is based upon the doctrine of subrogation, as there was no assignment to it of any cause of action which the trust company may have had against Wilmath. Had the surety company, therefore, on December seventh become subrogated to the claim of the trust company against him? Whether it later did become so subrogated is immaterial.

At the outset we may dispose of two suggestions. In paying the trust company $15,000 the surety company was not a mere volunteer. Precisely what its legal obligations were in the matter is not disclosed by the evidence before us. The trust company, however,

apparently in good faith presented a claim for that amount. Whether that claim would have been sustained as the result of litigation is not important. Rather than stand suit the surety company might in good faith yield to it and if it did so it would, upon payment, be subrogated to any claims which the trust company might have against its defaulting employee. A more difficult question is whether having paid the trust company for the loss caused by the dishonest act of an employee the surety company would be subrogated to the claims of the former against a stranger, Wilmath, based upon his overdraft. Not if the two transactions were unconnected. But if Wilmath knowingly received the fruits of the fraud, he was primarily liable to repay to the trust company the sum so wrongfully held by him. To this claim against him the surety company would then be subrogated. While the testimony on this subject is not as explicit as it might be, we think it shows such to have been the situation.

On December seventh, however, the surety company had made no payment whatever to the trust company. There is no claim that the insurance policy contained any provision with regard to subrogation. If that doctrine is to be applied here it must be by operation of law, and at law while payment would satisfy the creditors' claim against Wilmath, until such payment was made the claim remained enforcible by it for its own benefit. It is not liability to pay, but an actual payment to the creditor which confers the right to subrogation. (*McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92; *Ætna Life Insurance Co.* v. *Middleport*, 124 U. S. 534; *Ins. Co. of N. A.* v. *Fidelity T. & T. Co.*, 123 Penn. St. 523.) It was only on April 4, 1923, that the surety company might claim to be subrogated to the rights of the trust company against Wilmath. Until that day Wilmath became in no sense a debtor of the former. It follows that when the note was transferred to it the surety company was not a

holder for value and the defenses which Palmer might have interposed in an action brought against him by Wilmath are equally available to him in this action. (Neg. Instruments Law, sec. 97.)

The judgments of the courts below must be reversed and a new trial granted, with costs to abide the event.

Hiscock, Ch. J., Cardozo, Pound, Crane and Lehman, JJ., concur; McLaughlin, J., absent.

Judgments reversed, etc.