In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance, Appellant, for an Order to Take Possession of the Property of the LAWYERS TITLE AND GUARANTY COMPANY.

CITY BANK FARMERS TRUST COMPANY, Respondent.

(Argued June 8, 1934; decided July 3, 1934.)

22

*Lawrence S. Greenbaum, Jonas J. Shapiro, Theodore S. Jaffin* and *Benjamin Kaplan* for appellant.

24

*John F. Caskey* for Bond and Mortgage Guarantee Company, *amicus curiæ.*

*William D. Mitchell, Edwin W. Cooney* and *Edward L. Hunt, Jr.,* for respondent.

CRANE, J. We agree with the courts below that after the default of the Lawyers Title and Guaranty Company in paying the interest due June 1, 1933, the mortgagee, the City Bank Farmers Trust Company, had the right to terminate the agency or its relationship with the Title Company, take over the management and control of its property and was entitled to all papers and information connected therewith. This proceeding, commenced October 9, 1933, justified the declaratory order or judgment (Civ. Prac. Act, § 473) of the Special Term wherein these rights of the petitioner were stated. We also agree that in so doing the Trust Company did not release the Guaranty Company from any of its obligations under its contract, which means that if there be any liability for the default of the Guaranty Company it survives.

Whatever effect the action of the Superintendent of Insurance has had upon the failure of the Guaranty Company to pay the installments of interest as they come due, or the principal or to foreclose for taxes, will be settled later if desired or it be necessary. In a word, whatever rights the mortgagee has because of the Guaranty Company's default, if any, are not lost or waived because from now on it looks after its own property. We say " if any " because we do not understand the judgment below to determine that the orders of the Superintendent of Insurance amount to a breach of contract; they at least, and at most for this proceeding, terminate the agency at the election of the mortgage holder. The Superintendent of Insurance has no right of property in the mortgage and the company's failure to keep its agreement, even if justified by his orders, does not compel mortgagees to put up with incomplete service. The agency ends when the agent no longer can act as it agreed to do unless the persons interested acquiesce in the new arrangements.

We also agree with the disposition made of the rents collected by the Guaranty Company but do not quite follow all that has been said or written. It is not true that these mortgage companies may not reimburse themselves for interest advanced. In this particular case the situation is complicated or changed because of the year's default in taxes which accumulated while the company was collecting the rents for its own benefit. But for this the Guaranty Company could have kept the rents or the balance over and above the taxes due.

Under the contract of guaranty dated June 3, 1930, the company was to pay the interest due on this $3,000,000 mortgage within five days after it became due. The mortgagor had thirty days in which to pay it. Interest of $90,000 became due December 1, 1932, and the company sent its check for the amount although it had not received anything from the owner. Had the

latter sent the interest money at some later date the company could have kept and applied it to the advance made to the mortgagee. The fact the same taxes might have been due would not have changed these obligations. As a general proposition when interest has been advanced by the Guaranty Company to the mortgagee it was the expectation as well as the custom, well known and recognized, that the company would reimburse itself out of any moneys received thereafter from the mortgagor, whether obtained from rents or otherwise. I cannot tell from the briefs whether this is disputed by the attorneys in this case; probably not, as it is not important here. So, likewise, the company might take an assignment of the rents, pay the taxes due and keep the balance to reimburse its advanced interest to the mortgagee.

All these rights exist when the company does all the things it has contracted to do. Where, however, one part of the agreement is kept and the other broken then the courts see to it that the company is not profiting by its default; that it is not tempted to encourage or prolong a default until it recoups. Such is the present case.

While the Guaranty Company did not guarantee the payment of taxes it was under a duty to act to procure their payment. Taxes are a first lien and penalties accumulate rapidly for non-payment. The company could not, therefore, after it had advanced to the mortgagee the $90,000 interest due December 1, 1932, take an assignment of rents to reimburse itself in the face of a year's tax defaults amounting to $91,307.60 without adding interest and penalties and $39,086.55, which became payable May 1, 1933, while it was still collecting all the income from the property. The negotiation with the owner whereby the rents were procured acquainted the company with the owner's financial irresponsibility; thus the assignment of rents. To help itself, it took the only income there was to pay the taxes, leaving the

burden and responsibility to the mortgagee whom it was supposed to protect.

By the terms of the guarantee agreement the company undertook " to require the owner thereof to pay all such taxes, assessments and water rates and all such fire insurance premiums as by the terms of the mortgage are required to be paid." There was only one way to require the payment of taxes — by foreclosure proceedings in which a receiver would immediately be appointed, who would receive the rent and pay the taxes before he would pay interest on the mortgage or reimburse the Guaranty Company. Perhaps an assignment of the rents would temporarily obviate the necessity of a receiver and of foreclosure but the same implied duty of application would follow their receipt; taxes first. The petition alleges — the mortgage itself is not in evidence — that the mortgage provided " that in the event of the default in any of the terms and conditions thereof the rents are assigned to the mortgagee and shall be collectible by it." This was one of the covenants which the Guaranty Company was to enforce by " all such proceedings as may be necessary." The taking possession of the rents was just such a proceeding — it did not require a court proceeding — any other would do which brought results. The company did what it agreed to do, it proceeded to get possession of the rents, only it got them for itself instead of for the mortgagee. Herein it was at fault and cannot justify keeping them. For this purpose it was acting in a confidential trust relationship arising out of other parts of the guarantee contract; it had tied the hands of the mortgagee so that it could not act for itself and then took advantage of the situation. " By the acceptance of this policy the company is irrevocably appointed the exclusive agent of the assured at its own expense * * * to collect the interest on the bond and mortgage hereby guaranteed and to exercise every option or privilege in said bond and mortgage or either of them contained and given to the mortgagee."

One option and privilege was to seize the rents on default. The mortgagee had given to the guarantor this right and it proceeded to exercise it for its own benefit.

As before stated, the taxes due amounted to more — not less — than the interest paid by the Guaranty Company December 1, 1932, and continued to increase while it was collecting rents. Beginning with January 4, 1933, about one month after this interest payment, the company received from the owner the net rents, less a few disbursements, and the payments continued through February, March, April and May until $55,161.12 had been collected, which the company applied to the repayment of the interest advanced. On June 1, 1933, the Lawyers Title and Guaranty Company defaulted and the mortgagee determined to end the relationship or at least do so provided it released none of its rights more or less valuable under the policy with the company.

On August 11, 1933, the Superintendent of Insurance took possession and control of the Lawyers Title and Guaranty Company as rehabilitator. He has assumed the position that the Trust Company could not take over its mortgage unless it was willing to release the company from all liability. The company, therefore, has been collecting the income from the property, part of which has been paid under the rules and regulations of the Superintendent, to the mortgagee, and $19,205.98 has been left in reserve to pay taxes.

With this statement of our views we merely add that we agree, for the facts of this case, with the disposition of these funds. The $55,161.12 is a trust fund, now commingled with the company's general funds, so possibly cannot be traced. A referee has been appointed to make the attempt, and if he succeeds even then the amount will be paid only in proportion as there are assets to pay other trust funds of like nature. The $19,205.98 is to be paid over as it has been segregated. As the mortgagee did not acquiesce in the company continuing as its

agent even under the rehabilitation proceedings it should not be charged with the proportionate part of the expenses in carrying on the work of the company.

The order below should be affirmed, with costs.

The questions certified are answered: The second and fourth in the negative; all the rest in the affirmative.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Order affirmed, etc. (See 265 N. Y. 287.)