### FEAREY v. WILLIAMS et al.
### No. 408.

Circuit Court of Appeals, Second Circuit.
July 16, 1934.

Fearey, Allen & Coleman, of New York City (Morton L. Fearey, S. C. Coleman, and James B. Powell, all of New York City, of counsel), for petitioner.

Greenbaum, Wolff & Ernst, of New York City (Abraham I. Menin, Callman Gottesman, and Benjamin Kaplan, all of New York City, of counsel), for receivers.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

### L. HAND, Circuit Judge.

These are appeals from an interlocutory decree entered upon the petition of a testamentary trustee against insolvency receivers. In 1930 Fearey, the petitioner, whom it will be convenient to speak of as the mortgagee, bought a mortgage from the New York Title & Mortgage Company, which gave him a written guaranty, a separate document from the assignment. By this they guaranteed "payment of the principal of said bond and mortgage and of every instalment thereof, as soon as collected but in any event within eighteen months after the same shall have become due and shall have been demanded by the insured, with regular payment meantime of interest at the rate guaranteed." The rate guaranteed was 5½ per cent., the bond being for 6 per cent. interest; the difference went to the guarantors as a premium. The mortgagee made the guarantors his agents, and gave them exclusive power at their own expense to collect the principal and interest. The guarantors bound themselves to prosecute any actions that they might think necessary in order to enforce any covenants in the mortgage without expense to the mortgagee, and, among other things, "to require the owner to pay all * * * taxes, assessments and water rates which are required to be paid by the terms of the mortgage." The mortgagee agreed that only the guarantors should collect the interest and principal, and that they might buy in the property in his name at any sale in foreclosure, in which case they were entitled to a conveyance from him upon paying him the principal and interest. "Until such payment or until the expiration of eighteen months from the due date ᐧ * * when such payment must be made * * * the Company" (the guarantors) "shall be entitled to the possession and management of the said property and to control the leasing, repairs, maintenance and insurance thereof at its own expense, and to receive the rents and profits thereof; but at all times the liability of the Company under this policy shall continue until the insured shall have received the full amount of the principal * * * with interest."

On April 1, 1932, the mortgagor defaulted in the payment of interest and of an installment of principal, $2,400; he made no further payments, and the taxes are now in arrears. On May 16, 1932, the guarantors began a suit for "partial foreclosure," and on December 7, 1932, bid in the property through a subsidiary, the Liberdar Company, in whose name they took title. A foreclosure receiver turned over to the Liberdar Company $2,452.24, to which must be added $607.73 for other credits, making $3,059.97 in all. During their possession the company paid out upon the property $10,300.82, collected $7,150.33, and paid to the mortgagee $3,530.32 on account of the interest due April 1, 1933, leaving $692.68 unpaid. They have paid all taxes falling due during 1932, but none thereafter. The guarantors defaulted in the payment of the unpaid portion of the interest due April 1, 1933, and of the whole interest due in the following October; also as to both installments of principal, $2,400 each. On August 4, 1933, the state superintendent of insurance appointed a "rehabilitator" for the guarantors and on August 18th, receivers were appointed for the Liberdar Company, who have continued to occupy the premises and collect the rents. The judge held that the company should convey their title to the mortgagee at once, and that the receivers should use what they had themselves collected to pay the taxes which fell due on November 1, 1933; but so much as the Liberdar Company had collected before bill filed he directed the receivers to keep. Both sides appealed. Since the case was submitted, the Court of Appeals of New York in two decisions has answered most of the questions raised here. People, by Van Schaick v. Lawyers' Title & Guaranty Co., 265 N. Y. 20, 191 N. E. 720, and People, by Van Schaick v. New York Title & Mortgage Co., 265 N. Y. 30, 191 N. E. 723, filed July 3, 1934. As we agree in toto with what it said, it is not necessary to deter-

mine whether its ruling was authoritative upon us in any event.

■■ The Liberdar Company had no standing whatever except as dummy for the guarantors; otherwise they were interlopers and tort-feasors, without shadow of excuse for meddling in the mortgagee's business. At best they had therefore no greater powers than the guarantors; arguendo we will assume that they had equal powers. Moreover, the guarantors had no authority to take title in their own name, or in their dummy's. The excuse is that the agreement did not forbid such a course; though it gave the guarantors leave to take title in the mortgagee's name, it did not forbid them to take it in their own. That is a curious perversion. If it was thought necessary to give special leave to the guarantors to bid in the title at all, even in the mortgagee's name, certainly no more was intended. The guarantors acted as agents in all they did; and, while there are indeed instances in which an agent may take property in his own name, he must show some special warrant for it. Restatement of Agency, § 398. Here there was none, and the judge was plainly right in directing an immediate conveyance to the mortgagee.

■ As to the rents, it is quite true that, if the guarantors had bought in the premises in the mortgagee's name, they could have kept possession, and with it the rents. We are to assume that the situation was unchanged because of the taking in of title in the name of the Liberdar Company; that it is as though the guarantors were in possession under the mortgagee's title. Moreover, the guarantors' liability for the principal fell due only at the end of eighteen months after the mortgage became "due," and after the mortgagee had demanded payment; so far as the principal was concerned, they could have held possession throughout that period. But they had guaranteed "regular payment meantime of interest," and they were in default as to that as soon as the mortgagor failed to meet any payment; they had no period of grace, nor was any demand a condition. Their continued right to possession was conditional upon continued performance of their undertaking. It is true that this was not written in the text, but it followed from the substance of the contract. Their possession was only by way of indemnity, and the justification for it failed with their default, else they could keep the security and avoid the obligation which alone made it necessary. This is especially true as to the rents which were allocable to interest. The mortgagee need not therefore

make any demand to entitle himself to the rents. Doubtless the Liberdar Company's possession did not become tortious on the moment, but their right to the rents ceased and they received them thereafter as trustees for the mortgagee. It is unnecessary to decide whether before April 1, 1933, that company was bound to apply the rents to taxes; they did so; they paid all the taxes due before the guarantors' default. Nor is it necessary to say whether the appointment of the "rehabilitator" was an independent breach of the guaranty.

The decree must be modified to require the receivers to account for all rents received after April 1, 1933, either by the Liberdar Company or by themselves. No question has been raised as to what credits are properly allowable; nor do we understand that there is any difficulty in tracing the rents in the receivers' hands.

Decree modified in accordance with the foregoing.