## PRUDENTIAL INS. CO. OF AMERICA v. LAND ESTATES, Inc.

District Court, S. D. New York.
April 16, 1935.

Clark & Reynolds, of New York City (E. F. Clark, of New York City, of counsel), for complainant.

Henry M. Bellinger, of New York City, for defendant.

Greenbaum, Wolff & Ernst, of New York City, for receivers.

PATTERSON, District Judge.

The application is for an order directing the receivers of Land Estates to pay over to the plaintiff a fund of $11,752.16. The receivers were appointed on August 18, 1933, on creditor's bill.

The New York Title & Mortgage Company owned a $250,000 bond and mortgage on premises at Indian road and West 215th street, New York City. The mortgage contained a covenant by the owner to pay the taxes and made nonpayment a ground of foreclosure. On June 25, 1928, the title company sold and assigned the bond and mortgage to the plaintiff, at the same time issuing its policy or guaranty contract. The guaranty was in the form usual with this and other title companies, guaranteeing to the holder payment of principal and interest, and making the title company the agent of the holder to collect the debt and to enforce the mortgage.

There was a provision binding the title company to require the owner to pay taxes. Other provisions are set forth in Fearey v. Williams, 72 F.(2d) 263, 264 (C. C. A. 2).

Land Estates, a wholly owned and controlled subsidiary of the title company, in 1931 acquired a $22,000 second mortgage on the premises. It commenced an action in the New York Supreme Court in March, 1932, to foreclose the second mortgage, and had a receiver of rents appointed. The receivership for the benefit of the second mortgagee continued until November, 1933, when the plaintiff commenced suit to foreclose the first mortgage and had the receivership extended for its benefit. The receiver had collected the rents. Although authorized by the order appointing him to pay taxes, he made no such payments. At foreclosure sale on September 14, 1934, the plaintiff purchased the premises, sustaining a deficiency on its mortgage in excess of $100,000. In January, 1935, the receiver in foreclosure accounted and paid over to the receivers in equity of Land Estates the sum of $11,752.16. This sum represented the net rents from March, 1932, to November, 1933.

The taxes for 1931, 1932, and 1933 had not been paid. On December 30, 1933, the plaintiff paid the 1931 taxes at $10,907.11, and the 1932 taxes at $9,592.71. It brought the present petition on February 26, 1935, claiming that it was entitled to the $11,-752.16 on the ground that this sum, coming into the hands of the equity receivers of the second mortgagee as rents, should have been applied toward payment of taxes.

It appears that the second mortgage came into existence in this fashion: In February, 1929, the then owner of the premises conveyed to Wilton Holding Corporation, a wholly owned subsidiary of the title company. This deed was evidently one in lieu of foreclosure. The Wilton in August, 1929, sold the premises to a stranger, taking back a second mortgage for $22,000 as part of the purchase price and assigning this mortgage to Land Estates in 1931.

■ 1. Generally speaking, it is the law in New York that where a junior mortgagee commences foreclosure and has a receiver take possession of the premises, he may retain rents collected for his account by the receiver as against a senior mortgagee whose mortgage is also in default, but who takes no steps presently to obtain the rents. Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A. L. R. 1400. The junior is not even under duty to the senior to use the rents to keep down taxes, where his receiver in foreclosure is authorized but not directed to pay taxes. Ranney v. Peyser, 83 N. Y. 1; In re Kings County Real Estate Corporation (Lincoln Sav. Bank v. Realty Associates Sec. Corporation), 67 F.(2d) 895 (C. C. A. 2). These are the rules in the ordinary case where the parties concerned are strangers one to another. But they have no application to a case where by reason of contractual or other relationship the junior mortgagee is under specific obligation to the senior mortgagee to turn over rents or to apply rents toward payment of taxes.

■ The title company, by express provision of the guaranty contract with the plaintiff, was bound to require the owner to pay the taxes. If the owner defaulted in taxes, as happened here in 1931, the title company as agent of the first mortgagee was under plain duty to its principal to start foreclosure or take equivalent action to protect the first mortgage. Matter of People, by Van Schaick, v. Lawyers' Title & Guaranty Co., 265 N. Y. 20, 28, 191 N. E. 720; Matter of People, by Van Schaick, v. New York Title & Mortgage Co., 265 N. Y. 30, 36, 191 N. E. 723. If it had done so and had followed up by obtaining the appointment of a receiver in foreclosure, the rents would have been held for the first mortgagee or would have been applied toward payment of taxes for the security of the lien of the first mortgage. But the title company did nothing of the kind. Instead, it caused its subsidiary, Land Estates, to start foreclosure of a second mortgage held by Land Estates. The result has been that through breach by the title company of the duty it assumed toward the first mortgagee, the receivers of the title company's subsidiary have the rents and the taxes have been left unpaid, except to the extent that the first mortgagee has paid them out of its own pocket. The covenant by the title company to require the owner to pay taxes raised an obligation on the part of the title company to see to it that any rents coming into its hands were applied toward payment of taxes.

The fact that it was a subsidiary of the title company, rather than the title com-

pany itself, that held the second mortgage and enforced it and got the benefit of the rents is of no moment. In all that it did, the subsidiary acted at the behest of the parent. Prudential Ins. Co. v. Liberdar Holding Corporation, 72 F.(2d) 395, 398 (C. C. A. 2). Under the circumstances, the first mortgagee is equitably entitled to the rents in partial reimbursement of the moneys laid out for taxes.

2. The plaintiff has another string to its bow. The discussion thus far has been on the assumption that the title company or one of its subsidiaries acquired the second mortgage with its own funds. The circumstances indicate, however, that no such investment was made. While the facts in detail are not set forth, it is a fair inference and it is not denied that a subsidiary took title to the property after default and merely in lieu of foreclosure of the first mortgage. Under the terms of the guaranty contract, title acquired in foreclosure or by deed in lieu of foreclosure was held in trust for the first mortgagee. See Fearey v. Williams, supra. The second mortgage was derived from that title. It came into existence on sale of the property by the subsidiary. Consequently, it likewise was held in trust for the first mortgagee. The fund in question grew out of the second mortgage, and in equity it belongs to the plaintiff as first mortgagee.

3. The receivers assert that despite all this the fund is theirs by virtue of an agreement between the plaintiff and the title company under date of May 5, 1933. That agreement is long and somewhat complicated. Its general effect was to cancel the guaranty as to the future and to place with the plaintiff the full management and control of the mortgages held by it and of all appurtenances. The agreement has not the effect claimed by the receivers. Under it the title company agreed to turn over items coming to it from any of the properties, to be applied by the plaintiff against its investment in the mortgage on the particular property; and the title company further represented and covenanted that the taxes on all properties involved had been paid to and including the first half of 1932. The agreement was expressly made applicable to subsidiaries of the title company. On the property in question the taxes were in default for 1931 and the first half of 1932, and the taxes so unpaid exceeded the fund here in controversy. As to this fund, it is plain that

neither the title company nor the subsidiary was released by the plaintiff.

The plaintiff is entitled to the fund. An appropriate order may be submitted on two days' notice.