**In re THE WESTOVER, Inc.**

No. 196.

Circuit Court of Appeals, Second Circuit.

March 2, 1936.

Phillips & Avery, of New York City (Earl A. Darr and Eugene Blanc, Jr., both of New York City, of counsel), for The Westover Inc., debtor-appellee.

Kaufman, Weitzner & Celler, of New York City, and Thomas Cradock Hughes, of Brooklyn, N. Y. (Emil Weitzner, of New York City, Thomas Cradock Hughes, of Brooklyn, N. Y., and Isadore Polier and Harold S. Lynton, both of New York City, of counsel), for trustees of Prudence Co., Inc.

Delafield, Thorne & Marsh, of New York City (George H. Porter and Frederic P. Rich, both of New York City, of counsel), for appellees Certificate Holders Protective and Reorganization Committee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants are the trustees of the Prudence Company, Inc., itself a corporation being reorganized under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The issues here involved have arisen out of transactions which may be summarized as follows:

The Westover, Inc., the corporate debtor in these proceedings, acquired the title in fee to a parcel of land located at 253–263 West Seventy-Second street in New York City subject to several mortgages given by former owners in the aggregate principal amount of $1,300,000. On August 12, 1926, the debtor executed an additional mortgage on the premises in the principal amount of $100,000. All of these mortgages were merged in a consolidated first mortgage in the principal amount of $1,400,000 by agreement between the debtor and the Prudence Company, Inc., which

purchased the mortgages with its own funds. Afterwards, and on February 10, 1927, the Prudence Company, Inc., assigned these mortgages, so consolidated, together with the bonds secured by them, to Prudence-Bonds Corporation, which is also being reorganized under section 77B. It will be convenient to refer hereafter to these bonds and mortgages simply as the mortgage. Prudence-Bonds Corporation paid nothing for the assignment. It was wholly controlled by stock ownership by the same interests which owned all the stock of the Prudence Company, Inc., and took the assignment in furtherance of an arrangement between the Prudence Company, Inc., and itself whereby it would issue participating certificates in the mortgage to be' delivered by it to the Prudence Company, Inc., for sale to the investing public. In carrying out this arrangement Prudence-Bonds Corporation did issue such certificates to an amount. $177.22 less than the principal sum of the mortgage and delivered them to the Prudence Company, Inc. The latter company then sold all of such certificates except $23,400 in face value which it retained and the appellants now hold as its trustees. When the certificates were issued by Prudence-Bonds Corporation, it delivered the consolidation agreement, all mortgages, bonds, and documents relating thereto to the Manufacturers Trust Company in New York as depositary merely. The debtor never assumed personal liability under the mortgage; nor did Prudence-Bonds Corporation assume any liability for the payment of the certificates it issued.

The Prudence Company, Inc., executed its written guaranty of the payment of the mortgage and this guaranty was one of the documents deposited with Manufacturers Trust Company. The certificates bore a short résumé of its undertaking and a reference to the guaranty in the possession of the depositary.

Each certificate took the form of an assignment of an undivided equal share in the bonds and mortgages consolidated. It read, in part: "Prudence-Bonds Corporation, hereinafter called the 'corporation'; has received from ———, hereinafter called the 'registered owner,' ——— for the purchase of, and hereby assigns to the registered owner, an undivided share equal to that amount due ———, 19—, with interest at the rate of five and one-half per centum per annum, in the bonds of 253–263 West 72d Street Corp., in principal amount

$1,400,000.00 and in the mortgages securing the same, which are consolidated into one first mortgage and payment extended, covering premises situated on the north side of West 72nd Street, 100 feet east of West End Avenue, Borough of Manhattan, City and State of New York."

There followed a statement of the semi-annual interest due dates; a restriction in the amount of certificates outstanding at any time to the amount of the principal of .the mortgage; and a provision making all certificates equal in rank for the purposes of participation.

Certain conditions were set forth which will be noted in so far as they are now relied upon: (1) The depositary held all documents for the benefit of all parties in interest. (2) The Prudence-Bonds Corporation and the Prudence Company, Inc., either or both, were irrevocably authorized to collect all moneys payable upon the bonds and mortgages deposited; to credit such payments, and in its own name to satisfy or assign a mortgage upon full payment thereof; to account to the registered owner for his share of the principal and interest at the rate of 5½ per cent.; to retain any balance of moneys collected; to take any action necessary to protect the security; and in its own name to foreclose or otherwise enforce the provisions of any of the instruments relating to the mortgaged premises. (3) Prudence-Bonds Corporation, with the consent of the Prudence Company, Inc., had the power to waive or modify any of the provisions of any instrument, provided that in the judgment of Prudence-Bonds Corporation the security was not impaired and provided further that the Prudence Company, Inc., "shall not be released in any event from paying this certificate in accordance with the terms hereof."

On the back of each certificate appeared the following signed by the Prudence Company; Inc.:

"The Prudence Company, Inc., hereby certifies and guarantees 'to the holder of the within certificate that it has guaranteed payment of the interest on the bonds and mortgages within mentioned when due, and payment of the principal thereof when due or within eighteen months thereafter, together with interest thereon after maturity at the same rate until payment of principal is offered, by the guarantee referred to within and now in the possession of the Depositary.

"The Prudence Company, Inc., further certifies and guarantees that the interest of the holder of the within certificate in said bonds and mortgages is not subordinate to any other shares thereof and is not subject to any prior interest therein. By the acceptance of this certificate, the holder hereof agrees to the terms and conditions of said guarantee."

This debtor had not paid all of the interest and principal due on the bonds and mortgages covering the real estate, and the Prudence Company, Inc., was in default in the performance of its undertaking as above set forth when the 77B petitions for the reorganization of each of them were filed. After this debtor so failed to pay, and on March 9, 1932, it forestalled foreclosure by giving Prudence-Bonds Corporation, in accordance with an agreement it made with the Prudence Company, Inc., as additional security for the mortgage, a chattel mortgage for $1,134,-784.02, upon the furniture and fixtures in a hotel standing upon the premises and a third mortgage for $25,000 upon an adjoining parcel of land. This third mortgage contained a covenant of payment by this debtor. This additional security, however, is mentioned only in passing, as no payments have been made upon these mortgages and as their execution and delivery in no way effect the issues here they will be treated merely as collateral security given by the debtor for the payment of the consolidated mortgage upon its property.

On February 14, 1935, this debtor, having been continued in possession of its property, proposed a plan of reorganization. On May 14, 1935, the appellants, claiming as trustees of the Prudence Company, Inc., to be creditors, filed objections and on May 22, 1935, filed two claims. One of these claims was for the sum of $1,-260,419.61, which was made up of $1,134,-784.02 due on the principal of the consolidated mortgage when the debtor's petition was filed, $88,037.30 interest, $32,035.87 for tax deposits, and $5,562.42 for payments to be made in lieu of income taxes. The other was a claim for $177.22 which was the difference between the principal amount of the consolidated mortgage and the amount of the certificates issued by Prudence-Bonds Corporation.

The total amount due under the consolidated mortgage which made up the first claim exceeded the amount due upon all outstanding certificates, including those held by the appellants, by $13,076.10. This latter sum consisted of $7,336.44, which was the difference between the interest due on the mortgage at the rate of 6 per cent. and that payable upon the certificates at the rate of 5½ per cent., $5,562.44 which was payable under the terms of the mortgage in lieu of income taxes, and the $177.-22 not covered by the certificates issued.

These claims were disallowed except to the extent of $23,400, which was the amount of the certificates held by the appellants. That so reduced their status as creditors of the debtor that their objections to the plan of reorganization were ineffective to defeat it, other creditors in the proportion required by the statute having assented, and it was approved. Their appeals from the order reducing their first claim to $23,400 and disallowing the second claim and from the order approving the plan of reorganization have been consolidated for hearing.

The basis of the position the appellants seek to maintain is that the so-called guaranty of Prudence Company, Inc., was the primary obligation to the certificate holders secured by a pledge of the mortgage which remained the property of Prudence Company, Inc., subject to the pledge despite the assignment of it to the Prudence-Bonds Corporation and the issuance by that corporation of certificates which purported to assign to the certificate holders undivided interests in the mortgage itself. The appellees contend that the certificate holders are the creditors of the debtor to the amount of the certificates issued and that as to any excess due under the mortgage Prudence-Bonds Corporation is the creditor leaving the appellants creditors only to the amount of the certificates they hold.

█ The assignment of the mortgage to Prudence-Bonds Corporation was in form absolute. While it was without consideration sufficient, so we may assume, to have enabled Prudence-Bonds Corporation to have defended it successfully as between itself and the Prudence Company, Inc., the matter did not stop there. The real purpose of the assignment was fully carried out when Prudence-Bonds Corporation in fulfilling the arrangement between it and the Prudence Company, Inc., of which the assignment of the mortgage was a part, issued the certificates, delivered them to the Prudence Company, Inc., for sale to

the public, and deposited all the relevant documents with the bank as depositary for the benefit of all interested. Then the Prudence Company, Inc., sold those certificates, except the $23,400 retained, to the public representing them to be what they appeared to be, i. e., assignments of undivided shares in the mortgage itself which the Prudence Company, Inc., had guaranteed. In this way the rights of third parties became involved in the transaction. Those third parties invested their money on the strength of representations on the certificates they purchased from the Prudence Company, Inc. One of them was as above set forth that the Prudence Company, Inc., certified and guaranteed "that the interest of the holder of the within certificate in said bonds and mortgages is not subordinate to any other shares thereof and is not subject to any prior interest therein." This language is to be given the effect which the promisor reasonably knew the holders would understand it to mean and that is but what the plain words in their context do mean. Ryan v. Ohmer, 244 F. 31 (C.C.A.2). Ordinary principles of estoppel prevent the guarantor from asserting any undisclosed understanding with the Prudence-Bonds Corporation which would alter, to the detriment of the certificate holders, the terms of the certificates as written. The appellants, claiming solely in the right of the Prudence Company, Inc., are equally bound by the estoppel. So the rights of the parties must be determined by construing the certificates in accordance with their terms regardless of any private arrangement between the Prudence Company, Inc., and Prudence-Bonds Corporation.

It is well to point out that we are not here concerned with either the one or the other of two familiar phases of the guaranteed mortgage business. This is not a case of the guaranty of bonds secured by one or more mortgages assigned to a trustee as security for the mortgagor's undertaking to pay the bonds which is the obligation guaranteed. Nor is it the case of the issuance of certificates assigning no interest in any specific mortgage, but an undivided share in a principal sum secured by a group of mortgages deposited in a pool from which any security may be withdrawn provided the pool is kept ample in amount by the substitution of other security; where the certificates are payable in amounts and at times therein stated re-

gardless of the due dates of any securities deposited in the pool; and where the payment of the certificates has been guaranteed by a third party. Such a situation as last outlined was disclosed in People v. Title & Mortgage Guarantee Co. of Buffalo, 264 N.Y. 69, 190 N.E. 153, 96 A.L.R. 297, where it was held that the certificate holders had no interest in the pooled mortgages except as security for the obligation of the guarantor to pay the certificates which was the direct and primary obligation which the holders received when they purchased them. In a similar situation we treated that decision as binding upon us and followed it in Prudential Ins. Co. v. Liberdar Holding Corporation (C.C.A.) 72 F.(2d) 395.

Here, however, undivided shares in a certain mortgage were assigned by means of the certificates which contained no promise of payment except by reference to the terms of the mortgage itself. The obligation of Prudence Company, Inc., was a guaranty to pay interest on the bonds and mortgages when due, and payment of the principal when due or within eighteen months thereafter with interest after maturity and not otherwise to pay the certificates at all. The certificate holders, as the owners of the mortgage as tenants in common, became entitled to have payments made on the mortgage distributed to them in accordance with the terms of their certificates and to have the mortgage paid in accordance with its terms and the guaranty of the Prudence Company, Inc.

Although the Prudence Company, Inc., was given certain rights as agent to collect under the mortgage and deal with the mortgaged property, those agency rights were lost when it defaulted on its guaranty. Fearey v. Williams (C.C.A.) 72 F.(2d) 263; People, by Van Schaick, v. Lawyers' Title & Guaranty Co., 265 N.Y. 20, 191 N.E. 720; People, by Van Schaick, v. New York Title & Mortgage Co., 265 N.Y. 30, 191 N.E. 723. Thereafter the Prudence Company, Inc., not having any rights in the mortgage by way of subrogation because it had not paid, was a creditor of this debtor only to the extent that it was a certificate holder. We do not read In re Westchester Title & Trust Co., 268 N.Y. 432, 198 N.E. 19, 21, to be contrary. There the issue was whether or not the New York law under which the superintendent of insurance, and later the mortgage commission, took over a series of cer-

tificates issued under a single mortgage, was constitutional. It was held that such differences as there were between the rights of these certificate holders and the ones involved in People v. Title & Mortgage Guarantee Co. of Buffalo, supra, "do not effect the basic conditions which justified legislative action for the protection of the general welfare and the interests of holders of certificates. The rights of the certificate holders are substantially similar." We take this to mean merely that the test applied was not solely whether the certificates were issued under a single mortgage but rather whether, however issued, they conferred upon the holder rights which constitutional provisions forbade a state to take away.

With the single exception that this mortgage was not assigned to the depositary bank the situation is like that in Re Prudence-Bonds Corporation (C.C.A.) 79 F.(2d) 212 (Taft). Here the legal title to the mortgage underlying the certificates is held by Prudence-Bonds Corporation subject to the rights of the certificate holders. That difference, however, is of no importance so far as present issues are concerned. The same principles there stated apply here and make the certificate holders the creditors of the debtor under section 77B.

Since the Prudence Company, Inc., made no promise to pay the certificates except as it was bound to collect payments due under the mortgage or pay the mortgage itself, it had no primary obligation which the mortgage could have been pledged to secure. Moreover, it didn't have the mortgage to pledge for it had already been assigned to Prudence-Bonds Corporation. The denial of the contentions of the appellants based on the theory that the Prudence Company, Inc., was the pledgor of the mortgage with the rights flowing therefrom leaves no ground to support their claim that they were unjustly excluded from participating in the plan of reorganization filed by the debtor. As they are not creditors of the debtor except as they are certificate holders, any difference between the amount due on the mortgage and the amount to which certificate holders are entitled becomes for the present immaterial. No error in approving the plan of reorganization has been shown.

Orders affirmed.