### PRUDENTIAL INS. CO. OF AMERICA v. LIBERDAR HOLDING CORPORATION.

### BROOKLYN TRUST COMPANY v. LEIDER et al.

No. 262.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1936.

Cullen & Dykman, of Brooklyn, N. Y. (Ralph W. Crolly, of Brooklyn, N. Y., of counsel), for appellant Brooklyn Trust Co.

Greenbaum, Wolf & Ernst and Stephen Callaghan, all of New York City (Lawrence S. Greenbaum, Phillip F. Seigenfeld, and Callman Gottesman, all of New York City, of counsel), for ancillary receivers-appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition by the Brooklyn Trust Company, which is the owner of a consolidated mortgage on premises 441 Ocean avenue, in Brooklyn, N. Y., which secures outstanding certificates in the names of some 242 holders amounting in the aggregate to $575,000, for an order directing Liberdar Holding Corporation, the purchaser of the mortgaged premises at a sale in partial foreclosure, to convey title thereof to the trust company as trustee for the certificate holders, and that the ancillary receivers consent thereto.

The payment of the principal and interest of these certificates was guaranteed by New York Title & Mortgage Company (hereafter called the Mortgage Company). Prior to the issue of the certificates that company owned the consolidated mortgage outright but, upon the purchase by the certificate holders of participation interests in the mortgage, the Mortgage Company assigned to them undivided interests therein at par to the extent of the sums advanced. The Mortgage Company guaranteed payment of interest at the rate of 5½ per cent. as the same should become due under the terms of the bond and mortgage. Any excess of interest collected by the Mortgage Company beyond that rate was to belong to it. It also guaranteed payment of the principal when collected on each certificate as it became due, but in any event within eighteen months after payment should be demanded by the certificate holder. In the instrument of guaranty it was appointed agent of the assured to collect, sue for, and receive the principal and interest secured to be paid by the bond and mortgage and to satisfy and discharge the mortgage in its own name on receiving full payment thereof. The guaranty also provided that the Mortgage Company should have the right, without expense to the assured, to collect the mortgage and out of the proceeds to retain so much as might remain after paying to the latter whatever might be due of principal and interest. It further provided that the company might assign the bond and mortgage to any corporation organized under the banking or insurance laws, subject to the rights of the holders of certificates which might then be outstanding.

In 1932 the Mortgage Company, being then the record owner and holder of the consolidated bond and mortgage against which the certificates were issued and guaranteed by it, began an action for partial foreclosure in the New York Supreme Court, Kings County. New York Civil Practice Act, § 1086. A sale was had in the action for partial foreclosure and the property was bid in by Liberdar Holding Corporation, a wholly owned subsidiary of the Mortgage Company. The petition alleges that a referee's deed conveying the premises to the Liberdar Corporation was executed and delivered on or about August 30, 1932. On September 6, 1933, ancillary receivers were appointed in a conservation suit by the Prudential Insurance Company of America against the Liberdar Corporation. The affidavit of Receiver Dreyer states:

That the property was acquired by the Liberdar Corporation, " * * * as a result of a foreclosure instituted because of the non-payment of interest, and was acquired by defendant on November 30th, 1932.

"At or about the time of the acquisition of this property the defendant made the following disbursements:

| | |
|---|---|
| Referee's fee | $100.00 |
| Advertising | 84.50 |
| Foreclosure costs | 548.00 |
| Interest | 35,288.88 |
| Recording deed | 3.10 |
| | $36,024.48 |

"That on December 1st, 1932, the defendant paid the installment of interest due on that date in the sum of $17,250.00. Thus at the time the defendant acquired

title to the above premises all arrears under the mortgage thereon were liquidated."

The ancillary receivers, after their appointment, took possession of the mortgaged premises, collected the rentals until the 22d day of March, 1935, and made certain disbursements therefrom.

In March, 1935, the Liberdar Corporation, by its receivers, executed and delivered to the Mortgage Company in rehabilitation an assignment of the rents and income from the mortgaged property. In August, 1933, the Superintendent of Insurance of the State of New York applied to the court for authority to take possession of the property of the Mortgage Company and to conduct its business. On the 5th day of August, 1933, an order was made for the rehabilitation of the Mortgage Company empowering the Superintendent to take possession of its property and to conduct its business as authorized by law.

The Mortgage Company failed to comply with its guaranty by omitting to pay the interest on the certificates which became due on June 1, 1933, and likewise did not pay the subsequent installments of interest. A plan of reorganization of the rights of the certificate holders was promulgated by the superintendent and, on the 15th of June, 1935, a final order modifying and approving the plan was made by the court. The order provided for the election of a trustee of the consolidated mortgage for the benefit of certificate holders and, pursuant to it, the Brooklyn Trust Company became trustee. On the 30th day of August, 1935, the superintendent assigned to the Brooklyn Trust Company, as trustee, the bonds secured by the consolidated mortgage together with all right, title, and interest in the assignment of rents which the receivers had theretofore made thereof and the Trust Company went into possession of the mortgaged premises thereunder. The ancillary receivers accounted to the superintendent for rents collected during their occupancy. Whether or not their account was satisfactory we understand that the appellant now desires no action on our part in regard to the matter.

The principal sum of $575,000, interest due June 1, 1933, as well as the subsequent installments of interest, the taxes for 1935, and a balance of taxes for the second half of the 1934, still remain due and are all liens upon the mortgaged property.

The Brooklyn Trust Company, as trustee, has made demand on the Liberdar Corporation for a deed conveying the mortgaged premises, and upon the ancillary receivers that they execute a consent thereto, but neither demand has been complied with.

The Brooklyn Trust Company contended before Judge Moscowitz that Liberdar was the mere alter ego of the Mortgage Company, that the acquisition of title by it at the sale in partial foreclosure was in violation of the trust imposed upon the Mortgage Company, and consequently the title to the premises is held by Liberdar Corporation as a constructive trustee for the certificate holders and should be conveyed to the Trust Company as the trustee of the consolidated mortgage for the benefit of the certificate holders. The judge, however, held that the acquisition of title by Liberdar Corporation was not in trust for the certificate holders and denied the relief prayed for. As a result this appeal has been taken.

■ Even if we concede that the Mortgage Company was a trustee of the mortgage for the benefit of the certificate holders (and it certainly possessed powers and was subject to duties of a fiduciary nature), yet prior to December 1, 1932, it had paid to the certificate holders under its guarantee a year's interest on the mortgage which the mortgagor had been unable or failed to pay and, on December 1, 1932, it made a further payment of six months interest which became due on that date. Likewise on or before November 30, 1932, it paid the expense of foreclosure. The result of the decree for partial foreclosure, of the conveyance thereunder and of the foregoing payments, was the reduction of the amount due on the mortgage pro tanto. But the security for the balance of the indebtedness was left intact and Liberdar Corporation, as the representative of the Mortgage Company, became subrogated to the rights of the latter in the premises purchased at the sale subject, of course, to the lien of the mortgage as security for all sums still remaining unpaid to the certificate holders and to the rights of the Brooklyn Trust Company therein as trustee.

■ It is, however, said that there can be no subrogation because the Mortgage Company has not paid the whole debt and also because the payments were not made until after the title was taken. But, as Scudder,

J., said in Matter of City of New York, Smith St. etc., 244 App.Div. 102, 103, 278 N.Y.S. 280, 282, when dealing with the rule of law which prohibits "partial subrogation": "Each installment of interest, as it fell due, was a 'whole debt,' and may be treated as such. Advancement to the mortgage holder of each complete installment of interest is, therefore, payment of such claim in full." See, also, Miami M. & G. Co. v. Drawdy, 99 Fla. 1092, 127 So. 323. Likewise compare Prudential Ins. Co. v. Liberdar Holding Corporation (C.C.A.) 72 F.(2d) 395, where the applicability of the rule against "partial subrogation" was necessarily involved. Such decisions relating to "partial subrogation" as United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143; American Surety Company v. Palmer, 240 N.Y. 63, 147 N.E. 359; and Hanlon v. Union Bank of Medina, 247 N.Y. 389, 160 N.E. 650, therefore, do not apply to the situation.

The objection that there can be no subrogation because the payments were not made until after the title was taken has no more force than the other. The affidavit of the receiver Dreyer states that the property was acquired by Liberdar "on November 30th, 1932"; but whether that date be taken, or the earlier date of August 30, 1932, mentioned in the petition, we feel justified in assuming, even if the payments were not made until three months after the execution of the deed on August 30, that they nevertheless were made in connection with the acquisition of title and as part of a plan to acquire the property subject to the mortgage for the purpose of securing payments made under the guarantee. Under such circumstances, it seems to us that the Liberdar Corporation became fairly entitled to the equity in the premises subject to the rights of the certificate holders. The trust res was the mortgage itself, and not the real estate, and after all is said and done, that remains intact with security augmented by the payments which the Mortgage Company has made. We cannot see that they came too late to deprive the latter of its right of subrogation, as perhaps was the case in Hanlon v. Union Bank of Medina, 247 N.Y. 389, 392, 160 N.E. 650. Here they were made as a part of the plan to buy in the equity and in a fair sense contemporaneously with the purchase. The Mortgage Company, as purchaser at the sale in partial foreclosure, had an interest to protect and protected it without a detriment or even risk to the certificate holders. It may be said that the Mortgage Company ought not to be permitted to bid in the premises for the reason that it would thus occupy the dual position of owner of the mortgage for the certificate holders and owner of the equity of redemption on its own account and might be tempted to defer foreclosure and an application for a receiver after it became evident that the mortgage could not be paid from the land, while at the same time appropriating the rents. But as guarantor it would, at all times, be liable to pay any deficiency and consequently would have no motive for milking the property until it became itself insolvent, which is not shown to have been until some months after the purchase.

In Fearcy v. Williams (C.C.A.) 72 F.(2d) 263, which was also a case of partial foreclosure, there were no certificates but a single guaranteed mortgage owned by Fearcy as trustee of an estate. The guaranty, which was by this very Mortgage Company, authorized it to bid in the mortgaged property in case of default, but in the name of the owner of the mortgage. As in the case at bar, the Mortgage Company had its dummy, Liberdar Corporation, bid the property in. Under such circumstances we held that the equity receivers of Liberdar Corporation were properly directed to convey the property to Fearcy. We reached that conclusion because of the special clause in the mortgage empowering the Mortgage Company to bid in the premises in Fearey's name, and said at page 265 of 72 F.(2d): "If it was thought necessary to give special leave to the guarantors to bid in the title at all, even in the mortgagee's name, certainly no more was intended."

In Prudential Insurance Co. v. Liberdar Holding Corporation (C.C.A.) 72 F.(2d) 395, also a case of partial foreclosure, the Mortgage Company had deposited diverse mortgages on separate tracts in a pool with a depositary, had issued mortgage certificates representing aliquot shares of the mortgages so deposited, and had guaranteed payment of the certificates to the purchasers. On defaults in various mortgages the Mortgage Company had Liberdar Corporation and other subsidiaries bid in the mortgaged property at a partial foreclosure sale. We held that there was no breach of trust because the position of the certificate holders remained exactly as it was when the mortgage was originally de-

posited in the pool. All that had happened was that the land had been cleared of other liens, taxes, interest and the like which had accumulated. As we said [72 F.(2d) 395, at page 397]: "The defendant, acting for the company, had taken in the equity, by which it might indeed indemnify the company for the advances by which these liens were paid, but which could not effect the lien of the mortgage, being junior to it." While in the case at bar the Mortgage Company under its guarantee was bound to make the payments, there seems to be no reason why it should not secure itself as against the mortgagor where the rights or remedies of the certificate holders have not been prejudiced. That, we think, is all it in fact did.

For the foregoing reasons we think the order of the court below was right and should be affirmed.