JOSEPH W. FERRIS et al., as Trustees, Appellants, *v.* PRUDENCE REALIZATION CORPORATION, Respondent; CITY BANK FARMERS TRUST COMPANY et al., as Trustees, Appellants, et al., Defendants. (Action No. 1.)

SOLOMON ZAUDERER et al., Doing Business as KIMMELMAN AND ZAUDERER, on Behalf of Themselves and Others, Plaintiffs, *v.* PRUDENCE REALIZATION CORPORATION et al., Defendants. (Action No. 2.)

Argued January 5, 1944; decided March 10, 1944.

Charles H. Kriger and Henrietta Kriger for plaintiffs-appellants. I. The question of parity in this case is to be determined by the laws of the State of New York. (*Prudence Corp.* v. *Geist,* 316 U. S. 89; *Pink* v. *Thomas,* 282 N. Y. 10; *Matter of Title & Mortgage Guaranty Co.,* 275 N. Y. 347; *Hewit* v. *Berlin Machine Works,* 194 U. S. 296; *Security Warehousing Co.* v. *Hand,* 206 U. S. 415; *Van Glider* v. *Barnes,* 288 Mich. 492; *Union Trust Co.* v. *Willsea,* 275 N. Y. 164; *Sherman* v. *Buckley,* 119 F. 2d 280; *Foust* v. *Munson S.S. Lines,* 299 U. S. 77; *Thompson* v. *Magnolia Co.,* 309 U. S. 478; *Palmer* v. *Larchmont Manor Co.,* 284 N. Y. 288; *Matter of Title & Mortgage Guaranty Co.,* 275 N. Y. 347; *Chicot County Dist.* v. *Bank,* 308 U. S. 371; *People ex rel. C. P., etc., R. R. Co.* v. *Willcox,* 194 N. Y. 383; *Beck* v. *Bauman,* 187 App. Div. 774.) II. The Burnside certificates held by Prudence are subordinate to those publicly held. (*Pink* v. *Thomas,* 282 N. Y. 10; *Matter of Lawyer's Title & Guaranty Co.,* 287 N. Y. 264; *Matter of Title & Mortgage Guaranty Co.,* 275 N. Y. 347; *Title G. & T. Co.* v. *Mortgage Comm.,* 273 N. Y. 415; *Matter of People* [*Union Guar. & Mtg. Co.*], 285 N. Y. 337.)

Eugene Blanc, Jr., for defendants-appellants. I. *Prudence Corp.* v. *Geist,* 316 U. S. 89, requires subordination of the certificates acquired by the defaulting guarantor under the circumstances of the present case. (*American Ins. Co.* v. *Avon Park,* 311 U. S. 138; *Matter of Prudence-Bonds Corporation,* 102 F. 2d 531.) II. The reservations in the two reorganization plans require that the question of parity be now determined in accordance with the law applicable to the relations existing among the certificate holders and the guar-

antor, as of a time just prior to the latter's bankruptcy. (*Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347; *Pink* v. *Thomas*, 282 N. Y. 10; *Matter of People [Union Guar. & Mtg. Co.]*, 285 N. Y. 337; *Matter of Lawyers Title & Guaranty Co.*, 287 N. Y. 264; *Smith* v. *Chase Nat. Bank of City of New York*, 84 F. 2d 608; *Matter of Moose River Lumber Co.*, 251 F. 409; *Hanlon* v. *Union Bank of Medina*, 247 N. Y. 389; *McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92; *American Surety Company of New York* v. *Gerold*, 255 App. Div. 285; *New Jersey Equities Co.* v. *Mandel*, 178 Misc. 783.) III. Subordination under the circumstances of this case will not violate the bankruptcy rule of equality of distribution. (*Taylor* v. *Standard Gas Co.*, 306 U. S. 307; *Pepper* v. *Litton*, 308 U. S. 295; *Prudence Corp.* v. *Geist*, 316 U. S. 89; *Bank of America Nat. Trust & Sav. Assn.* v. *Erickson*, 117 F. 2d 796; *Matter of Allied Properties Co.*, 118 F. 2d 773.)

*Irving L. Schanzer* for respondent. I. The question of parity of Prudence certificates is a Federal question as to which the Bankruptcy Act (U. S. Code, tit. 11) and the Federal decisions are controlling. (*Prudence Corp.* v. *Geist*, 316 U. S. 89; *Matter of New York Title & Mortgage Co.*, 277 N. Y. 66; *Ivanhoe Bldg. Assn.* v. *Orr*, 295 U. S. 243; *Matter of New York Title & Mortgage Co.*, 160 Misc. 67; *Brenen* v. *Dahlstrom Metallic Door Co.*, 189 App. Div. 685; *Frank* v. *Mercantile National Bank*, 182 N. Y. 264; *Cassedy* v. *Johnstown Bank*, 246 App. Div. 337; *Schneck* v. *Lewis*, 121 Misc. 370, 210 App. Div. 845; *Sturm* v. *Chatham & Phenix National Bank*, 121 Misc. 47; *Erie R. Co.* v. *Tompkins*, 304 U. S. 64; *Awotin* v. *Atlas Exchange Bank*, 295 U. S. 209; *Local Loan Co.* v. *Hunt*, 292 U. S. 234; *Brooklyn Trust Co.* v. *Kelby*, 134 F. 2d 105; *Jennings* v. *U. S. F. & G. Co.*, 294 U. S. 216.) II. No conflict exists between decisions of the Court of Appeals and the United States Supreme Court with respect to the issues here involved. (*Matter of Title & Mortgage Guarantee Co.*, 275 N. Y. 347.) III. Assuming, *arguendo*, that the decision of the United States Supreme Court is not controlling, the certificates held by Prudence Realization Corporation are entitled to parity under the New York law.

THACHER, J. These consolidated actions arose under a plan for the reorganization in bankruptcy of guaranteed mortgage participation certificates known as the Burnside issue which was confirmed by the United States District Court for the Eastern District of New York on June 14, 1938, in proceedings for the reorganization in bankruptcy of Amalgamated Properties, Inc. (hereinafter called Amalgamated). Before the confirmation of the plan, these proceedings were on April 22, 1938, severed from similar proceedings for the reorganization of The Prudence Company, Inc. (hereinafter called Prudence). Under a plan for the reorganization of another issue of guaranteed mortgage participation certificates questions similar to those involved here were raised in the reorganization court and were ultimately decided by the Supreme Court of the United States in *Prudence Corp.* v. *Geist* (316 U. S. 89) and we are confronted at the outset by the contention that that case is controlling here. It is therefore necessary to consider the proceedings in the Federal courts in that case, the proceedings in bankruptcy with reference to the Burnside issue and the terms and conditions of the Burnside plan of reorganization pursuant to which these suits were brought in the Supreme Court of this State.

The decision of the United States Supreme Court in *Prudence Corp.* v. *Geist* (*supra*) was rendered in consolidated reorganization proceedings for the reorganization in bankruptcy of Prudence and Amalgamated. The particular proceeding under review in that case related to the reorganization of an issue of guaranteed mortgage participation certificates known as the Zo-Gale Realty Co. issue. In connection with that issue Prudence, the guarantor of the certificates, claimed parity of payment of certificates purchased by it from the proceeds of assets received by Amalgamated on account of the mortgage debt. It was held that Prudence in bankruptcy reorganization was entitled to such parity of payment on the certificates purchased by it, notwithstanding the decisions of this court in *Matter of Lawyers Title & Guaranty Co.* (287 N. Y. 264); *Matter of People (Union Guar. & Mtg. Co.)*, (285 N. Y. 337); *Pink* v. *Thomas* (282 N. Y. 10); *Matter of Title & Mortgage Guaranty Co.* (275 N. Y. 347); *Title G. & T. Co.* v. *Mortgage Comm.* (273 N. Y. 415); *Matter of Lawyers Mortgage Co.* (*545 West End*

*Ave.*) (272 N. Y. 554); *Matter of New York Title & Mortgage Co.* (272 N. Y. 556).

The Supreme Court held that there was no basis for the conclusion of the Circuit Court of Appeals that it was bound to apply, as " a rule of construction of the guaranty in the certificates," the rule announced in New York; that there was no evidence of actual intent to subordinate certificates owned by Prudence, and that, so far as the New York cases, without evidence of the actual intent of the parties, subordinate the guarantor on grounds of " presumed intention ", or " the existence of special equities," or the " natural equities " involved, the rule laid down is one of State law governing the relative rights of claimants in a State liquidation. (316 U. S. 93, 95.)

The suits in the State court which are now before us are not proceedings in bankruptcy nor are they State liquidation proceedings. Each is brought to determine relative rights in property held for the satisfaction of a mortgage. Such rights, if not determined or defined by provisions of a plan of reorganization predicated upon the consents required by the Bankruptcy Act and approved by the bankruptcy Judge as " fair and equitable ", must be determined by the law of New York where the land is situated and where the bond and mortgage, the participation certificates and the agreement of guaranty were made and delivered. Accordingly, it becomes necessary for us to consider whether any provision of an approved plan of reorganization or any order of the bankruptcy court has determined or defined the relative rights of Prudence and other certificate holders to share in the security of the mortgage or in sums received on account of the mortgage debt. We find none in this record, which, so far as pertinent, may be summarized as follows:

Action No. 1 was brought by the trustees named in the declaration of trust required by the plan for the reorganization of the Burnside issue. This plan was confined to reorganization of the certificated bond and mortgage and the certificates. It did not embrace in its scope anything other than the mortgaged property,— 307 West 36th Street in the city of New York,— the personal property therein owned by Amalgamated, the certificated bond and mortgage, the certificates, and any other money or property to which the certificate holders were

entitled. All rights of action against the obligor upon the bond and against Prudence, pursuant to its agreement of guaranty, were expressly reserved. With reference to the payment of certificates acquired by Prudence, the plan as amended contained the following reservation:

" A question has arisen with respect to the rights of The Prudence Company, Inc., or its Trustees on account of the certificates held or claimed by them, including so-called ' unissued certificates.' Anything in the Plan to the contrary notwithstanding, the Trustees to be appointed hereunder shall make no distributions of cash or other property or securities which would be otherwise distributable on account of the certificates now held or claimed by The Prudence Company, Inc., or its Trustees, including said ' unissued certificates,' unless and until it shall have been finally adjudicated by a Court of competent jurisdiction whether or not The Prudence Company, Inc., or its Trustees, or their successors or assigns, are entitled to receive such cash or other property or securities and to share in the proceeds of the property to be assigned to the Trustee pursuant to the Plan and on a parity with other certificate holders or otherwise. The actual distribution of such cash, securities or other property shall be made in accordance with such final adjudication. Pending such final adjudication the Trustee to be appointed pursuant to the Plan shall hold in escrow the share of any cash, property or other securities distributed under the Plan to which the certificates held by The Prudence Company, Inc., or its Trustees, including said ' unissued certificates,' would be entitled if owned and held by persons other than The Prudence Company, Inc., or its Trustees."

Among the defendants named were Prudence Realization Corporation (herein called Realization Corporation), which holds legal title to the assets formerly owned by Prudence, including certificates of the Burnside issue. The defendants other than Realization Corporation were sued as representatives of holders of Burnside certificates.

Plaintiffs acknowledged that they were holding as trustees the bond and mortgage, the title to the mortgaged premises 307–13 West 36th Street without merger of the mortgage with the fee and that the rights of the holders of mortgage participation certificates in and to the bond and mortgage and in and to the

guarantee of Prudence were assigned to plaintiffs as trustees, who also hold the guarantee and the sum of $26,950.80 distributable to certificate holders when the relative rights of Prudence and of other certificate holders have been determined.

The relief sought was a judgment declaring the rights and interests of Realization Corporation and all other certificate holders in and to the corpus and income of the trust estate and an accounting by Realization Corporation for moneys distributed to or held by it or by Prudence on account of Burnside certificates.

Action No. 2 was brought by Kimmelman and Zauderer, a firm holding Burnside certificates, against Realization Corporation and Ferris et al., the plaintiffs in Action No. 1. The relief sought is similar to that prayed for in Action No. 1. Actions Nos. 1 and 2 were consolidated.

Special Term held that an issue of fact was presented and denied summary judgment. Realization Corporation, City Bank Farmers Trust Company and Lindgrove, as trustees, and plaintiffs in Action No. 1 appealed. The Appellate Division reversed on the law the order denying Realization Corporation's motion for summary judgment and granted such judgment. It affirmed the order insofar as it denied judgment to City Bank and Lindgrove and to plaintiffs in Action No. 1.

Under the reservations in the Burnside plan, the question of parity of payment upon the certificates held by Realization Corporation remained undecided when the plan, as amended, was finally confirmed on June 14, 1938. Upon confirmation the court retained exclusive jurisdiction for certain stated purposes, but, in view of the langauge quoted above with regard to the determination of the question of parity " by a Court of competent jurisdiction ", did not retain exclusive jurisdiction to determine the question of parity. On December 27, 1940, an order was made in the Bankruptcy Court which " terminated and finally closed " the bankruptcy proceedings with respect to the Burnside issue, and on January 17, 1941, an order was made terminating the entire proceeding for the reorganization of Amalgamated with the single exception of the motion then pending before the District Court in the *Geist* case. The latter order read: " ORDERED, ADJUDGED AND DECREED that the debtor, Amalgamated Properties, Inc., is hereby discharged from the

control and supervision of this Court * * * and these proceedings shall hereafter be treated as dismissed for all purposes, except the determination of the questions raised in the pending motion of A. Joseph Geist, the Trustee appointed by this Court pursuant to the plan of reorganization herein for the certificated mortgage on premises known as 202 Riverside Drive, Borough of Manhattan, City and State of New York (Zo-Gale Issue), for determination of the relative priorities in said certificated mortgage of the certificates held by Prudence Realization Corporation and the certificates held by the public.''

Shortly after the entry of this order the pending actions were commenced on February 26th and 25th, 1941, respectively.

Upon this record it appears without contradiction that the Burnside plan of reorganization did not attempt to define or determine the relative rights of Realization Corporation as the holder of certificates acquired by Prudence and of other holders of Burnside certificates, nor was any determination of these rights made in the Bankruptcy Court in the course of its administration or in connection with the distribution of any of the assets either of Prudence or of Amalgamated. The controversy, therefore, was brought to the State courts, as contemplated by the plan of reorganization, for determination of these relative rights unaffected by the reorganization consummated in the Federal court.

Corporate reorganization in the Federal courts is a process of adjustment and modification of legal rights frequently involving the impairment of contractual obligations under plans predicated upon the consent of security holders and creditors and upon the court's approval of the plan as fair and equitable and therefore binding upon the minority. If neither the plan nor any order in the proceeding undertakes to modify the legal rights but leaves those rights to be determined by courts of competent jurisdiction, such courts have no power to impair the legal or equitable rights of the parties. The court below erroneously regarded the *Geist* case as establishing a rule. It was only effective in determining a question affecting the administration and distribution of assets in the particular reorganization before the court. To conclude that our decision is ruled by the decision of the Supreme Court in the *Geist* case, we should have to modify the Burnside plan of reorganization,

which did not undertake to determine, define or modify the relative rights of certificate holders under the Burnside mortgage.

It is therefore necessary for us to determine for ourselves whether or not under the decisions of this State Prudence was entitled to parity of treatment for its certificates with the certificates held by others in this mortgage.

The certificates here in question were created and issued in the following manner: In June of 1927 Prudence was the owner of a bond and mortgage in the sum of $1,200,000, reduced by payments to $1,100,000, made by the Burnside Improvement Co., Inc. The mortgagor had agreed with Prudence to pay interest at six per cent and amortization of $12,000 payable semiannually. This bond and mortgage Prudence assigned to its wholly owned affiliate, Prudence-Bonds Corporation, in order that it might issue mortgage participation certificates therein bearing its guarantee as to principal and interest at five and one-half per cent. Prudence-Bonds Corporation entered into a deposit agreement with the Bank of America dated June 25, 1927, pursuant to which the bond and mortgage were assigned to the bank. Prudence in turn executed, acknowledged and delivered to the bank its agreement guaranteeing to each holder of participation certificates payment of interest when due and payment of principal when due or within eighteen months thereof. The deposit agreement contains the following provision:

" The Bond and Mortgage, an appraisal showing the value of the real property covered by said mortgage to be at least fifty per centum more than the amount of said mortgage, the guarantee of The Prudence Company, Inc., guaranteeing to the holders of the certificates payment of principal and interest, and the insurance policies and other instruments and evidences of title relating thereto are and shall continue to be held by The Bank of America as Depositary for the benefit of all parties interested in said Bond and Mortgage, according as their interest may appear, it being understood and agreed between the parties hereto and by and with the persons who will from time to time be the holders of said certificates, that each certificate shall represent and be an evidence of the ownership of an undivided share or part to the extent of the princi-

pal amount therein stated, in the aggregate principal of said Bond and Mortgage and the mortgage debt secured thereby (with interest at the rate specified in said certificate) and that each holder is entitled to a like proportion, right or benefit in said guarantees of payment, policy or policies of title insurance, insurance policies and other instruments and evidences of title relating thereto, accompanying the same, or which may at any time accompany or be collateral thereto, and held by the Depositary, each such share or part being owned by the holder thereof without priority of any share or part over any other, whether held by the Corporation or Depositary or by the holder of any other certificate to be issued hereunder, and each share or part not being subordinate to any other shares thereof and not subject to any prior interest in said bond and mortgage." Prudence was not a party to this agreement and the words "the Corporation" refer to Prudence-Bonds Corporation.

The certificates acknowledge payment for an undivided share or part in the bond and mortgage of Burnside Improvement Co., Inc., equal to the amount paid. The certificate provides:

"The share or part in said bond, mortgage and extension agreement represented by this certificate, is not and shall not be subordinate to any other share or shares thereof, and is not and shall not be subject to any prior interest therein."

The Corporation and Prudence, the guarantor, are irrevocably authorized to collect moneys payable under the terms of the mortgage; to credit the bond, mortgage and extension agreement with payments thereon; to satisfy or assign said mortgage upon payment thereof; to "account to the holder of this certificate for his share of the principal and for interest at the rate of five and one-half per cent per annum thereon, payable under the terms of this certificate and to retain any balance of moneys collected * * * ". The certificate also contains the following:

"The Corporation, the Guarantor and The Bank of America, New York, for their respective corporate accounts, may be the holder or pledgee of similar shares in said bond and mortgage, as extended."

On the reverse side of the certificate Prudence certifies its guarantee and further certifies and guarantees "that the share

or part of said bond, mortgage and extension agreement represented by the foregoing certificate is not subordinate to any other share or shares thereof, and is not subject to any prior interest therein.'' The Bank of America also certifies on the back of the certificate " that the share or part of said bond and mortgage, as extended, represented by the foregoing certificate, is not and shall not be subordinate to any other share or shares thereof, and is not and shall not be subject to any prior interest therein.''

We are concerned only with the claim for parity on account of certificates acquired by Prudence after default by the mortgagor. Most of the acquisitions were either by exchange of outstanding certificates for other similar investments or in part for such investments and in part for cash. Certain certificates were purchased through a brokerage account at prices substantially below par and interest. As a result of all of these transactions, Prudence acquired certificates in the face amount of $425,212.86 at a cost to it of $418,372.66, or about one and six-tenths per cent below par on all of the certificates acquired. Although these certificates aggregating $425,212.86 face value were all acquired by Prudence prior to March 1, 1933 — and some as early as March 3, 1932 — they were on March 1, 1933, canceled and a new certificate for the entire amount was issued in the name of Reconstruction Finance Corporation. A month later, on April 4, 1933, this certificate was in turn canceled and a new certificate for the same amount was issued in the name of Prudence.

The decisions of this court cited (*supra*) control decision here. In *Matter of Title & Mortgage Guaranty Co.* (275 N. Y. 347) the Title Company, which had issued and sold mortgage participation certificates and had guaranteed to purchasers payment of principal and interest due thereon, retained an unsold interest in the mortgage of $200. In proceedings for the rehabilitation of the Title Company, the Superintendent of Insurance as liquidator claimed, upon the judicial settlement of the accounts of the trustees, that it was entitled as holder of the $200 interest to share in the distribution of the amount collected upon the bond and mortgage *pro rata* with the holders of the guaranteed certificates. It was held that the holders of the guaranteed certificates had a prior right to payment out

of the proceeds of the mortgage. In the opinion *Title Guarantee & Trust Co.* v. *Mortgage Commission* (273 N. Y. 415) was discussed and it was pointed out that in that case the certificates were not guaranteed by the assignor nor was there any language in the certificate indicating that the interest retained by the assignor should be subordinated in any manner to the interests assigned by holders of certificates. The opinion continued (at p. 352): "In earlier cases, to which the court referred with approval in its opinion in *Title Guarantee & Trust Co.* v. *Mortgage Commission* (*supra*), we had held that in the absence of contractual provisions to the contrary, a corporation which has issued and *guaranteed* participation certificates in a bond and mortgage is not entitled, as owner of a retained portion of the bond and mortgage, for which no certificate had been issued, to share in insufficient proceeds of the securities, *pro rata* with the holders of the certificates which had been issued. (*Matter of Lawyers Mortgage Co.* [*545 West End Ave.*], 157 Misc. Rep. 813; affd., 248 App. Div. 715; affd., 272 N. Y. 554; *Matter of New York Title & Mortgage Co.*, 272 N. Y. 556)." Reaffirming these decisions, the court found them to be supported by the weight of authority in this and other jurisdictions, citing decisions from other states to the same effect, and continued: "In other cases where the courts have reached the conclusion that an assignor of part of a debt may share in insufficient proceeds of the debt even though the assignor had guaranteed payment of the part assigned, the courts usually found such intention either expressed in the assignment or implied by silence in circumstances which create special equities in favor of the guarantor." Consideration was given to the question of insolvency of the guarantor in its relation to the theory of circuity of action, and conclusion was reached that, where the actual intent of the parties was that an assignee should have priority over an assignor who was also a guarantor, insolvency of the guarantor cannot deprive the assignee of his right to such priority, because, as the court said, enforcement of contractual rights granted by the guarantor would in such case not give rise to an inequitable preference over other creditors of the guarantor. The court continued: "That is true in this case. The right of the certificate holder to preference in the distribution of the proceeds rests not only

upon presumption of intent derived from the guaranty of the assignor, but also upon actual intent clearly implied in the clause of the certificate which provides that upon the collection of the proceeds of the mortgage by the assignor it shall have the right ' out of the proceeds of such collection to retain so much as may remain *after* paying to the holder hereof whatever may be due to such holder of principal and interest on this certificate as herein provided.' '' A similar clause was considered in *Matter of People* (*Union Guar. & Mtg. Co.*), (285 N. Y. 337, 344). The language in the certificate was that the Guaranty Company ''\* \* \* shall likewise have the right to retain, out of the proceeds of collection of said bond and mortgage, so much as may remain after paying whatever may be due to the assured of principal and interest on this or other certificates.'' Of this provision it was said in the opinion: '' It is clear from the language used in the above-quoted portion of the certificates that such portion is sufficient evidence of an actual intent on the part of the contracting parties to grant priority to the certificate holders.'' So far as that part of the opinion is concerned, it was unanimous.

In this case there is a similar provision in the certificate, quoted (*supra*). While there are verbal differences in these three clauses, they are all of the same effect and expressly provide that the guarantor, having collected the proceeds of the mortgage, shall pay these certificates and retain the surplus. Here, as in the other cases, there are other clauses which, standing alone, might be taken to indicate parity of treatment as between the guarantor and the other certificate holders. This was true in *Matter of Title & Mortgage Guaranty Co.* (*supra*) and in *Matter of People* (*Union Guar. & Mtg. Co., supra*). When there is ambiguity in the agreement relied upon by the guarantor in support of a claim of parity, the rule denying parity to the guarantor is enforced. (*Pink* v. *Thomas,* 282 N. Y. 10, 12.) In the latest decision of this court (*Matter of Lawyers Title & Guaranty Co.,* 287 N. Y. 264) it was held that a certificate owned by the guarantor and pledged as collateral for a loan was subordinate to the interest of the owner of a certificate purchased by the holder.

Under the settled course of decisions in this State the guaranteed mortgage participation certificates held by the defendant, Prudence Realization Corporation, are not entitled to

parity of payment in the distribution of moneys received or assets held for the payment of the mortgage indebtedness but are subordinate to the claims of other certificate holders in the same issue.

The judgment of the Appellate Division, should accordingly be reversed, with directions to enter judgment declaring that the certificates held by the defendant, Prudence Realization Corporation, are subordinate to those held by others, and directing the defendant, Prudence Realization Corporation, to turn over to Joseph W. Ferris, George L. Long and Henry Leifert, as trustees under the declaration of trust dated as of July 1, 1938, with respect to 307 West 36th Street (Burnside) first mortgage participation certificates, all moneys held by it on account of any of the Burnside participation certificates, with costs in this court and in the Appellate Division to the plaintiffs and defendants-appellants in Action No. 1.

The judgment of the Appellate Division should be reversed and judgment directed in accordance with this opinion, with costs in this court and in the Appellate Division to the plaintiffs-appellants and defendants-appellants in Action No. 1.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.