## PRUDENCE REALIZATION CORPORATION *v.* FERRIS ET AL., TRUSTEES, ET AL.

No. 137.   Argued December 8, 11, 1944.—Decided January 29, 1945.

*Mr. Irving L. Schanzer,* with whom *Mr. James F. Dealy* was on the brief, for petitioner.

*Mr. Charles H. Kriger,* with whom *Mrs. Henrietta Kriger* was on the brief, for Ferris et al., and *Mr. Eugene Blanc, Jr.,* with whom *Messrs. John Ross Delafield* and *Robert McC. Marsh* were on the brief, for City Bank Farmers Trust Co. et al., respondents.

*Messrs. Roger S. Foster* and *Milton V. Freeman* filed a brief on behalf of the Securities & Exchange Commission, as *amicus curiae,* urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This action was brought in one of the courts of the State of New York to adjudicate conflicting claims against property held to satisfy a mortgage debt. The immediate controversy arises out of the reorganization in a United States district court of a large New York guaranty company, another phase of which was before us in *Prudence Corp.* v. *Geist,* 316 U. S. 89.

Petitioner's predecessor, The Prudence Company, Inc., loaned money on real estate and issued guaranteed mortgage participation certificates. (For an exposition of the business details see *In re The Westover, Inc.,* 82 F. 2d 177.) The enterprise was on a vast scale, running into the hundreds of millions. Our immediate concern is with certificates of participation issued by Prudence in a bond and mortgage made by Burnside Improvement Company. Prudence guaranteed the certificate holders the payment of interest and principal when due or within eighteen months thereafter. Burnside, the mortgagor, defaulted in the payment of an instalment of principal due January, 1932. After this default, Prudence itself purchased, either directly from the holders or through a concealed brokerage account and usually at a discount, certificates aggregating $431,212.86, approximately 42% of the amount of outstanding certificates. In June, 1932, the mortgaged premises securing the Burnside certificates were conveyed to Amalgamated Properties, Inc., a wholly-owned subsidiary of Prudence.

In 1935 Prudence went into reorganization under § 77B of the Bankruptcy Act, 48 Stat. 912, and was adjudicated insolvent in 1938. As part of the Prudence proceed-

ings, Amalgamated, in 1936, filed a voluntary petition for reorganization, but the two were later severed. Thereafter, under a reorganization plan confirmed by the District Court, all the assets of Prudence, including the Burnside certificates reacquired by it, were transferred to petitioner, Prudence Realization Corporation.

In the Amalgamated proceeding Prudence claimed to participate in the mortgage on a parity with other Burnside certificate holders. The claim was opposed on the ground that Prudence, having defaulted on its guaranty, was not entitled to parity with other holders of certificates. The bankruptcy court neither decided this question of parity nor reserved it for decision. It "terminated and finally closed" the Amalgamated proceeding by confirming a plan which left the claim of participation by Prudence in the Burnside bond and mortgage for adjudication by a "Court of competent jurisdiction." There were provisions, with which we are not here concerned, for holding in escrow, pending such an adjudication, the share claimed by petitioner.

Thereafter, respondents, the trustees under the Burnside plan, and various certificate holders brought this action in the New York Supreme Court to determine petitioner's right to participate as holder of certificates acquired by the insolvent guarantor. Petitioner's claim for parity of treatment was denied, but this denial was reversed by the Appellate Division, 266 App. Div. 543, 42 N. Y. S. 2d 528, which in turn was reversed by the Court of Appeals. It held that state law governed and that New York subordinated the guarantor's certificates. 292 N. Y. 210, 54 N. E. 2d 367. We brought the case here because conflict with *Prudence Corp.* v. *Geist, supra,* was strongly pressed. Precise appreciation is therefore required of the record now before us compared with that on which the *Geist* decision was based.

In the *Geist* case, the claim of parity by the same petitioner arose in connection with different property and an-

other certificate issue, the Zo-Gale issue. In that case also the question of parity was not settled in the order of confirmation. But, while it was reserved for a court of competent jurisdiction, the confirmation order clearly indicated that the bankruptcy court was reserving jurisdiction in itself. "The court retains jurisdiction to hear and determine all questions arising under paragraph 7 of this order"—so ran the terms of the reservation of the parity question in the *Geist* case—and the trustees "are hereby granted leave to apply at any time at the foot of this order for such adjudication." The trustee, Geist, accordingly applied to the bankruptcy court for an order adjudicating the rights of the certificate holders and that court, "In the Matter of a Plan of Reorganization of Amalgamated Properties, Inc., Debtor, in Respect of the Zo-Gale First Mortgage Participation Certificates" issued an order to show cause. When the Amalgamated proceeding with respect to the Zo-Gale property was subsequently closed, the order provided that "these proceedings shall hereafter be treated as dismissed for all purposes, except the determination of the questions raised in the pending motion by A. Geist . . . for determination of the relative priorities . . ." The bankruptcy court had patently retained for decision the question affecting the distribution of the bankrupt's property, although in all other respects it had wound up the proceedings. "The bankruptcy act prescribes its own criteria for distribution to creditors . . . The court of bankruptcy is a court of equity to which the judicial administration of the bankrupt's estate is committed, . . . and it is for that court—not without appropriate regard for rights acquired under rules of state law—to define and apply federal law in determining the extent to which the inequitable conduct of a claimant in acquiring or asserting his claim in bankruptcy requires its subordination to other claims which, in other respects, are of the same class." *Prudence Corp.* v. *Geist, supra* at 95. Accordingly we held that the district court,

sitting as a bankruptcy court, was under duty to apply federal and not state law, and that, in the circumstances of the *Geist* case, there was "no agreement and no equitable basis for depriving the Prudence Company and its creditors of the benefits of the usual bankruptcy rule of equality." *Prudence Corp.* v. *Geist, supra* at 97.

This case is not the *Geist* case. Here the bankruptcy court neither considered the question of parity nor retained jurisdiction to consider it. The order of confirmation contained no provision for retention of jurisdiction to decide the parity question as did the *Geist* order. Nor did the closing of the reorganization reserve jurisdiction, as did the *Geist* closing order. The provisions for disposition of the impounded funds in case subordination be determined are much more elaborate than the *Geist* case discloses. In short, while the provisions for adjudication of the parity question in the *Geist* case clearly contemplated determination of it as part of the reorganization proceedings by the bankruptcy court itself, in the present case the bankruptcy court washed its hands of the problem and left the parties to litigate the question in another forum. For it is not questioned that the state court was a "Court of competent jurisdiction" for adjudicating the claim of parity.

To be sure, the Securities and Exchange Commission, as *amicus curiae,* suggests that the bankruptcy court was in error in failing to retain jurisdiction for determining this aspect of distribution. But the different treatment of the same problem by the same court in the *Geist* case and in this, together with acquiescence by the petitioner in the closing order without seeking a review of the nonretention of jurisdiction, give ground for believing that the arrangement was the product of bargaining between the parties. In any event, since no appeal was taken, it is not now open to find error by the bankruptcy court in failing to retain jurisdiction. The order confirming the plan of reorganiza-

tion is res judicata. *Chicot County Dist.* v. *Baxter State Bank*, 308 U. S. 371, 378.

But it is urged that although the bankruptcy court specifically refused to consider the rights of the parties and remitted them, plainly enough, to the state courts for their determination, the rights were to be determined in the state courts by federal law because the parties had passed through federal reorganization proceedings. In spite of an order of final termination, the authority of the bankruptcy court, it is argued, somehow continues to be effective. Despite the fact that neither the bankruptcy court nor the reorganization statute professes to alter rights unless disclosed in the plan or in an order, we are asked to recognize some enveloping cloud of amenability to the law governing bankruptcy proceedings.

We find no warrant in the statute for so holding. Section 77B, under which this reorganization was accomplished, provides in subsection (g) that upon confirmation "the provisions of the plan and of the order of confirmation shall be binding." The rights are thus fixed as the plan and the order provide and are not otherwise affected. Subsection (h) provides that upon final confirmation the debtor or its successor corporation "shall put into effect and carry out the plan and the orders of the judge relative thereto . . . and the property dealt with by the plan . . . shall be free and clear of all claims of the debtor, its stockholders and creditors, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan . . ." The final decree, discharging the trustees and closing the case, "shall discharge the debtor from its debts and liabilities, and shall terminate and end all rights and interests of its stockholders, except as provided in the plan or as may be reserved as aforesaid." Here the court entered appropriate orders to secure the execution of the plan and the termination of the proceedings. But the relative priority of participation was passed

upon neither in the plan nor by the court. Instead, it was specifically reserved. And it was reserved for determination, as the parties saw fit to have it determined, by the New York courts without restriction by the federal adjudication. The parties were out of the federal bankruptcy court with their original rights modified by the terms of the reorganization plan. When they came before a New York court seeking a determination of their present rights, that court was obliged to ascertain whether any rights had been fixed by the reorganization plan and, if so, to enforce them. Rights not affected by the federal proceedings the New York court was free to decide according to New York law. The bankruptcy court had refused to fix the rights of the parties as to the participation of Prudence-owned Burnside participations, and expressly left them to be fixed by the New York court as a "Court of competent jurisdiction." Accordingly, it was for the New York Court of Appeals to define the governing New York law.

And since, in the circumstances of this case, New York law governs, we are not called upon to indicate, it hardly needs to be added, whether the result would be different were the federal rule for distribution to creditors applicable.

*Affirmed.*

Mr. Chief Justice Stone.

I concur in the result.

The relative priority of Prudence's participation in the bankrupt's estate in a 77B reorganization is a federal right governed by federal not state law. *Prudence Corp.* v. *Geist,* 316 U. S. 89, 95. As the reorganization plan did not purport to alter that right, but merely provided that it should be determined by a court of "competent jurisdiction," I cannot conclude that the adoption of the plan contemplated or effected the alteration of the federal right

by requiring it to be redefined in terms of the law of New York, or of any other jurisdiction, where the parties might happen to seek its adjudication.

The fact that a federal right is to be ascertained in a state rather than in a federal court does not make it any less the duty of the court to apply federal law. *Chesapeake & Ohio R. Co.* v. *Martin,* 283 U. S. 209, 212–213; *Awotin* v. *Atlas Exchange Bank,* 295 U. S. 209; *Brady* v. *Southern R. Co.,* 320 U. S. 476, 479, and cases cited; *Illinois Steel Co.* v. *Baltimore & Ohio R. Co.,* 320 U. S. 508, 511, and cases cited; *Steele* v. *Louisville & Nashville R. Co.,* 323 U. S. 192, 204. And a mere grant by the federal court of permission to the parties to litigate a federal question in a state court, is not a direction that the question be determined by state law, more than is a general statutory authorization for a suit in the state court on a federal right.

The state court has held that petitioner, the holder of mortgage participation certificates, is not entitled to share in the mortgage until the holders of other certificates, which petitioner has guaranteed, are paid in full. Its judgment should be affirmed, not because the plan called for determination of petitioner's rights in the bankrupt's estate by state rather than federal law, but because in the circumstances of this case the applicable federal law is the same as that which the state court has applied. Petitioner did not, as in the *Geist* case, acquire its interest in the mortgage as an original investment before it sold and guaranteed certificated shares in the mortgage, nor did it acquire its own certificates independently of the performance of its obligation as a guarantor of the certificates. Petitioner is here in the position of a subrogee of a claim whose payment it has guaranteed. For it acquired its claim to participate in the mortgage through performance of its guaranty, by purchase, after default, of the certificates of participation which it had guaranteed.

As we recognized in the *Geist* case, and were at pains to point out, 316 U. S., at p. 96, such a case is within the rule of *United States* v. *National Surety Co.*, 254 U. S. 73, 76; *Jenkins* v. *National Surety Co.*, 277 U. S. 258; *American Surety Co.* v. *Westinghouse Electric Co.*, 296 U. S. 133, "that a solvent guarantor or surety of an insolvent's obligation will not be permitted, either by taking indemnity from his principal or by virtue of his right of subrogation, to compete with other creditors payment of whose claims he has undertaken to assure, until they are paid in full."

MR. JUSTICE RUTLEDGE concurs in this opinion.