**DENVER & R. G. W. R. CO.**

v.

**GOLDMAN, SACHS & CO.**

No. 4774.

United States Court of Appeals, Tenth Circuit.

April 29, 1954.

Rehearing Denied May 26, 1954.

Henry McAllister, Denver, Colo. (Thomas R. Woodrow, Denver, Colo., on the brief), for appellant.

Kenneth W. Robinson, Denver, Colo. (Percival E. Jackson, Theodore N. Tarlau, New York City, Robert D. Charlton, and Charles R. Enos, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Goldman, Sachs & Co. filed this petition in a reorganization proceeding instituted by The Denver and Rio Grande Western Railroad Company under Section 77 of the Bankruptcy Act. 11 U.S.C.A. § 205. The petition alleges that Goldman, Sachs & Co. is the owner of bonds issued by the Rio Grande in the face amount of $3,-399,000, the payment of which was secured by a mortgage on the Rio Grande property and 100,000 shares of Utah Fuel Company stock as additional collateral. Relying upon a provision in the consummation order and final decree entered in the reorganization proceeding, the petitioner seeks an order to require the reorganized company to pay, for the benefit of the petitioner and those in a like situation, certain costs and expenses incurred by the indenture trustees in a proceeding brought in the New York State Supreme Court to foreclose the liens against the Fuel Company stock. The reorganized company answered, denied liability to the petitioner or those similarly situated, and pleaded facts which would establish its nonliability. The prayer in the answer was for an order to dismiss or deny the petition. This appeal is from an order refusing to dismiss the petition. 115 F. Supp. 150. The order was one entered in a proceeding in bankruptcy, and this court has appellate jurisdiction under the provisions of 11 U.S.C.A. § 47.

In 1935, the Rio Grande sought reorganization under Section 77 of the Bankruptcy Act. At the time, it had outstanding various mortgage bond issues, including Rio Grande Western First Consolidated Bonds, Refunding and Improvement Mortgage Bonds, and General Mortgage Bonds. These issues were liens upon the Rio Grande property in the order of priority in which they are named. As additional security for these issues, the Western Pacific Railroad Corporation and the Missouri Pacific Railroad Company, owners of all the capital stock of the Rio Grande, pledged 100,000 shares of Utah Fuel Company stock. The lien priority on this collateral was the same as that on the Rio Grande property, except the senior lien of the First Consolidated Mortgage was limited to $6,000,000.

In 1947, the reorganization was completed by the entry of a consummation order and final decree which cancelled and declared to be null and void the outstanding mortgages and obligations as a liability of the reorganized company except as they related to the Fuel Company stock. The District Court reserved jurisdiction to determine certain matters not material here, and to allow compensation and fees including those incurred by the indenture trustees in establishing their interest and claims in the Fuel Company stock. That stock was not the property of the Rio Grande, and the bankruptcy court recognized that it had no jurisdiction over it, and that the trustees of the First Consolidated Mortgage would have to establish the rights of the bondholders in another tribunal. R.F.C. v. Denver & Rio Grande Western Railroad Co., 328 U.S. 495, 525, 66 S.Ct. 1282, 1384, 90 L.Ed. 1400. The consummation order required the trustees of the different mortgages to satisfy and release them, "but with re-

spect to said Utah Fuel Company stock said trustees shall continue to act as trustees under and subject to the terms and conditions of their respective mortgages, * * * ". The order further provided that, "The Reorganized Company shall pay to each of said trustees reasonable compensation for services rendered and reimbursement for expenses incurred by it, including attorney's fees, in securing an adjudication of its interests or claims, if any, as trustee, in and to said stock of the Utah Fuel Company, in such amount as may hereafter be approved and allowed by this Court."

Shortly after the entry of the order, the trustee of the First Consolidated Mortgage brought an action in the State Court of New York to foreclose its lien on the Fuel Company stock. The trustees of the Refunding and Improvement Mortgage and the General Mortgage, intervened and presented their claims. The New York Court determined that the First Consolidated Mortgage was a first lien on the stock to the extent of $6,000,-000; that the Refunding and Improvement Mortgage was a second lien in the amount of its deficiency; and that the General Mortgage was a lien on any balance remaining. An order was entered accordingly and it was affirmed on appeal. Guaranty Trust Co., as Trustee v. Chase Nat. Bk., 277 App.Div. 767, 97 N.Y.S.2d 542. The stock was sold in the foreclosure proceedings for $6,800,000. The trustee of the First Consolidated Mortgage was paid $6,000,000, less a small amount for expenses. The trustees were allowed various items of costs and expenses which aggregated the sum of $395,884.30. Of that amount, $325,394.-58 was allowed to the trustees and their counsel.[1] The remainder was for compensation to referees and to certain bondholders who had intervened in the proceedings. With one exception, which is not in dispute, all allowances were charged against the $800,000 which, under the foreclosure decree, was to be distributed to the trustee of the Refunding and Improvement Mortgage Bonds.

The primary question to be determined is whether the payment of these allowances in the New York proceedings relieved the reorganized company from

[1]. The following is an itemized statement of the allowance to the trustees and their counsel.

| | |
|---|---|
| The Trustee for the First Consolidated Mortgage Bonds | |
| For services | $ 85,000.00 |
| Reimbursement for expenses | 7,193.00 |
| Counsel for the Trustee, | |
| For services | 100,000.00 |
| For supplemental services | 45,000.00 |
| For disbursements | 598.99 |
| The Trustee for the Refunding and Improvement Mortgage Bonds, | |
| For services | 15,000.00 |
| Reimbursement for expenses | 371.15 |
| For supplemental services | 2,000.00 |
| Counsel for the Trustee, | |
| For services | 20,000.00 |
| For reimbursement for expenses | 374.13 |
| For supplemental services | 20,000.00 |
| For disbursements | 347.23 |
| The Trustee for the General Mortgage Bonds, | |
| For services | 7,500.00 |
| For reimbursements for expenses | 1,260.06 |
| For supplemental services and disbursements | 750.00 |
| Counsel for the Trustee, | |
| For services | 15,000.00 |
| For supplemental services | 5,000.00 |
| Total | $325,394.58 |

any obligation under the provision of the consummation order. The petitioner contends that these allowances are the obligation of the reorganized company under the provisions of the approved reorganization plan and the consummation order. The Rio Grande concedes that the provision was improvidently entered but urges that it must be literally construed and cannot be extended by implication for the benefit of the bondholders. In other words, it contends that the bankruptcy court intended only to protect the trustees in the event the New York court did not grant reasonable allowances to them and their counsel. We cannot agree with this interpretation. The consummation order specifically kept alive the liens of the mortgage indentures as they related to the Fuel Company stock. The mortgages provided that the mortgagor should be responsible for all expenses in connection with their enforcement in case of default, and that in the distribution of the proceeds from a judicial sale, the trustee should first pay the costs and expenses of the sale, "including reasonable compensation to the Trustee and to its agents, attorneys and counsel". The consummation order provided, in so many words, that the reorganized company should not be relieved from the payment of such costs and expenses.

■■ The underlying purposes of reorganization, as contemplated by the statute, are to rehabilitate debtor corporations according to sound business principles, permit them to continue in business, and, at the same time, protect stockholders and creditors to the full extent of the value of their equities and claims. The essence of these purposes lies in a plan which classifies and treats claimants in a fair and equitable manner. When a reorganization plan has been certified by the Interstate Commerce Commission and approved by the court, it becomes final, is binding upon the debtor, the security holders, and all other interested parties, and must be enforced as written. 11 U. S.C.A. § 624; Prudence Realization Corp. v. Ferris, 323 U.S. 650, 65 S.Ct.

539, 89 L.Ed. 528; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Evans v. Dearborn Machinery Movers Co., 6 Cir., 200 F.2d 125, 127; Knapp v. Detroit Leland Hotel Co., 6 Cir., 153 F.2d 715, 717; North Amer. Car Corp. v. Peerless W. & V. Mach. Corp., 2 Cir., 143 F. 2d 938, 941; Curtis v. O'Leary, 8 Cir., 131 F.2d 240, 245; Mohonk Realty Corp. v. Wise Shoe Stores, 2 Cir., 111 F.2d 287, certiorari denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418. The plan which was accepted and approved in this case required the reorganized company to pay the fees and expenses of the trustees, including attorney fees, in establishing their interests and claims to collateral security which was pledged for their benefit. In securing an adjudication of their interests and claims in this stock, the trustees, of course, were acting for the bondholders. It was their duty under the terms of the mortgages to foreclose in case of default and sell the stock for the benefit of the bondholders. In the foreclosure sale, if the sums realized were less than the amount due, the bondholders would suffer a loss of the deficiency and the expenses of the foreclosure. It appears to us that it was the purpose of the plan and the consummation order to relieve the trustees, and through them, the bondholders, of the expenses of foreclosure and to place this burden upon the reorganized company. When the consummation order and final decree was entered there was no objection, and it became final. The Rio Grande does not now question its validity in any respect.

■ The consummation order made the Rio Grande primarily liable for the costs and expenses in question. The New York court required the trustees to pay them under the terms of the mortgage indentures. They were paid from funds which were held by the trustees for the benefit of the bondholders and which would have been distributed to the bondholders if the Rio Grande had complied with the terms of the consummation order. Under the equitable doctrine of subrogation, "Where two persons are equal-

ly liable to the creditor, if as between themselves there is a superior obligation resting on one to pay the debt, the other after paying it, absent countervailing equities, is entitled to be subrogated to the debt and the creditor's security therefor, to obtain reimbursement." New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65, 70. See also 50 Am. Jur., Subrogation, Sec. 6; Bennett v. Preferred Acc. Ins. Co. of New York, 10 Cir., 192 F.2d 748. The consummation order provides that the Rio Grande shall pay only reasonable compensation for the services of the trustees and expenses incurred by them including attorney's fees, in securing an adjudication of the interests and claims of the trustees. Any other expenditures or charges against the fund are not the responsibility of the reorganized company.

■ Rio Grande further contends that the court erred in finding that the record did not establish the fact that the petitioner had surrendered its bonds for cancellation in order to receive its distributive share of the proceeds from the sale of the Fuel Company stock, and that under the rule of State Street Trust Co. v. Muskogee Electric Traction Co., 10 Cir., 204 F.2d 920, it could not obtain any further benefit from the bonds. The trial court did not pass upon this question, but the surrender of the bonds would not be an impediment to a recovery of an amount which the reorganized company was obligated to pay under the consummation order. Assuming that the bonds had been surrendered and cancelled, the rule of the State Street Trust Co. Case would not be applicable. There the bonds were intentionally destroyed by the owner who believed that they were valueless. Here they were surrendered and cancelled under an order of the New York Court, and the bondholders are relying upon the requirements of the consummation order and not upon obligations created by the bonds.

Judgment affirmed.