In re DENVER & R. G. W. R. CO.

In re GOLDMAN, SACHS & CO.
No. 8669.

United States District Court
D. Colorado.
Sept. 30, 1953.

Kenneth Robinson, Robert Charlton, Robert Swanson, Charles R. Enos, Denver, Colo., Percival E. Jackson, and Theodore N. Tarlau, New York City, for petitioner.

Henry McAllister and Thomas R. Woodrow, Denver, Colo., for Rio Grande Western R. Co.

KNOUS, District Judge.

On November 1, 1935, the debtor railroad filed a petition for reorganization under the then Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. At that time, and throughout the entire proceeding, the following bond issues of the debtor were outstanding:

1. Rio Grande Western First Consolidated Mortgage Bonds;

2. Refunding and Improvement Mortgage Bonds;

3. General Mortgage Bonds.

These bonds constituted a lien on the entire property of the debtor, and, what is most important for the purpose of determining the merits of the pending controversy, they were secured by, and constituted a lien on, the outstanding capital stock of the Utah Fuel Company. It is not necessary that the history of these bond issues or of the Utah Fuel Company stock be detailed here. Suffice it to say that the priority of the liens which these bond issues imposed against the Utah Fuel Company stock was in the order in which the bonds have been named above, and that the security itself, the Utah Fuel Company stock, was not part of the debtor's estate. The title to this stock, and the equity of redemption therein, was held and owned by the Missouri Pacific and Western Pacific Railroads.

The reorganization proceedings concluded with a Consummation Order and Final Decree, on April 10, 1947. This document declared all three bond issues null, void and satisfied, except insofar as they constituted liens against the Utah Fuel Company stock. These liens were expressly preserved and could be foreclosed at a subsequent date, or otherwise enforced, as the indentured trustees for the bondholders saw fit. The Consummation Order and Final Decree, after authorizing and directing the trustees to continue to act in that capacity with respect to the Utah Fuel Company stock "and subject to the terms and conditions of their respective mortgages" provided, inter alia, the following:

"The Reorganized Company shall pay to each of said trustees reasonable compensation for services rendered and reimbursement for expenses incurred by it, including attorney's fees, in securing an adjudication of its interests or claims, if any, as trustee, in and to said stock of the Utah Fuel Company, in such amount as may hereafter be approved and allowed by this Court."

Subsequent to the entry of the Consummation Order and Final Decree, on May 15, 1947, the trustee under the Rio Grande Western First Consolidated Mortgage Bonds commenced a proceeding in the Supreme Court of the State of New York to enforce the lien of its bondholders against the Utah Fuel Company stock. In due course, the respective trustees for the bondholders of the Refunding and Improvement Mortgage Bonds and of the General Mortgage Bonds entered their appearance in that proceeding in order to assert and fix the liens of their own bondholders. The New York Court adjudicated the senior lien of the Rio Grande Western First Consolidated Mortgage Bonds to amount to six million dollars, and the lien of the Refunding and Improvement Mortgage Bonds, which were second in priority, to amount to sixteen million dollars. The extent of the lien of the General Mortgage Bonds is immaterial here.

The Utah Fuel Company stock was sold in the course of the New York litigation. It brought a price of $6,800,000. If this gross amount had been distributed, according to the respective priorities of the bondholders, the Rio Grande Western First Consolidated Mortgage Bondholders would have realized six

million dollars and the Refunding and Improvement Mortgage Bondholders would have obtained eight hundred thousand dollars. However, the New York Court ordered that the expenses of the entire litigation, including attorney's fees for counsel for the trustees under all three bond issues, as well as trustee's fees for all three trustees and reimbursement of their expenses, be paid out of the proceeds from the sale of the stock, prior to distribution. These total costs amounted to $415,384.30. The Court directed that of this sum $395,884.30 be taken from the distributive share of, and be, in effect, paid by, the holders of the Refunding and Improvement Mortgage Bonds, and that the remainder of $18,500 be assessed against the distributive share of the Rio Grande Western First Consolidated Mortgage Bondholders.

The petitioner herein has alleged that it is the owner of Refunding and Improvement Mortgage Bonds in the face amount of $3,399,000. It seeks an order from this Court directing that such part of the expenses which in the New York litigation was assessed against the holders of these bonds, amounting to $395,884.30, be paid by the reorganized company for the benefit of the holders of Refunding and Improvement Mortgage Bonds, as their interests may appear.

The petitioner relies primarily, of course, on the provision in the Consummation Order and Final Decree, previously quoted, in support of its position. On its face, this provision is unambiguous, clear and distinct. Its language contemplates the very adjudication which was conducted in New York and expressly provides that the reasonable costs of said adjudication, as determined by this Court, should be borne by the reorganized company. It is difficult to imagine more precise language by which the liability for which the petitioner contends could be imposed. In addition, the Consummation Order and Final Decree contains other provisions which lend support to its contention. Thus, paragraph 7 provides, inter alia:

"The Reorganized Company shall also pay, in such amounts as have heretofore been *or shall hereafter* be allowed by this Court * * * all other expenses and costs of administration of these proceedings, including allowances of fees or compensation for services and reimbursement of expenses heretofore or hereafter rendered or incurred in connection with these proceedings or the plan by or on behalf of parties to these proceedings. For the purposes of this paragraph (7) all compensation for services rendered and all expenses incurred by the trustees now acting under the mortgages referred to in paragraphs (16) and (18) of this order (being the mortgages which secured the bond issues here in question) * * shall be deemed to be expenses incurred in connection with these proceedings or the plan." Italics and written matter between parentheses supplied.

And paragraph 50 provides, so far as is material here, that:

"The Court hereby reserves jurisdiction to allow fees or compensation for services and reimbursement for expenses heretofore *or hereafter* rendered or incurred in connection with these proceedings or the plan. * * *" Italics supplied.

The reorganized company has urged that these provisions were inserted in the Consummation Order and Final Decree solely for the purpose of making certain that the indentured trustees were adequately compensated, irrespective of what the future of the Utah Fuel Company stock might be. However, no such motive seems to be revealed on the face of the decree. And the argument that when this Court unequivocally ordered the reorganized company to pay certain expenses, it really meant that the holders of the bonds of the debtor corporation should pay them and that the reorganized company should have nothing to do with the matter unless the bondholders are in no position to pay, is not convinc-

ing. It becomes even more novel when it is considered that the bondholders were the indentured trustees' beneficiaries under express trusts.

 A second reason urged for the denial of the petition stems from the unquestioned fact that the Utah Fuel Company stock was not owned by the debtor corporation, was not an asset of the estate in reorganization and was not subject to the jurisdiction of this Court throughout that proceeding. It seems to the Court that such circumstances are entirely immaterial. The petition does not pray that this tribunal enter an order which could in any way bear on or concern this stock. If the relief sought is granted, it will no more reflect on the Utah Fuel Company stock than it will reflect on the outstanding capital stock of any other corporation, except perhaps that of the reorganized company. Surely it cannot be said that when this Court had jurisdiction over the debtor corporation, the reorganized company, the indentured trustees, the bondholders and the administration of the respective trusts and mortgages, it is prohibited from determining whether the reorganized company or the bondholders shall bear the costs and expenses and fees which are incidental to a determination of the latter's rights in and to the security, simply because it does not have jurisdiction over the security itself. The security and its disposition is one thing. The duty of determining who shall, in the final analysis, bear the reasonable costs of the New York litigation which, truly enough, concerned that security, is quite another. This Court has not in the past and will not now adjudicate with respect to the former; but heretofore it expressly assumed the latter by entering the order here in concern and certainly retains jurisdiction to enforce that order and prevent it from becoming a nullity.

 It has also been argued in opposition to the petition that whatever bonds the petitioner at one time may have held were surrendered by it and cremated under orders of the New York Court; that, therefore, the petitioner is not now a bondholder and has lost all standing as such in this Court. This argument at this time is somewhat anticipatory. No proper evidence, from which the petitioner's precise status as either a present or past bondholder can be ascertained, has, as yet, been introduced. The Court will not now give a legal opinion on a hypothetical state of facts. The entire history of these bonds as it relates to the petitioner must be detailed by evidence before the Court is to determine whether or not the petitioner can recover.

 Finally, it must be borne in mind that the Consummation Order and Final Decree provided that this Court, as distinguished from any other tribunal, should determine, approve and allow the reasonable amount of the costs and fees and expenses of what, in effect, was and has herein been referred to as the New York litigation. In view of this, the amount of recovery, if any, is of course not fixed by the sums which the New York Court deemed fit to award. Proper evidence has still to be offered on the basis of which this Court can make its own independent determination concerning the reasonable value of the various services rendered and of the reasonable costs and expenses incurred.

It is Therefore, Ordered, Adjudged and Decreed that the prayer of the Denver and Rio Grande Western Railroad Company for an order denying and dismissing the petition be and the same is hereby denied and that the matter be set down for further hearing upon the merits in due course.